*In re* HUMBERTO RAMÍREZ FERRER, querellado.

*Número:* CP-96-004      *Resuelto:* 1ro de marzo de 1999

*Humberto Ramírez Ferrer, pro se; Domingo Laracuente y María de Lourdes Rodríguez,* abogados de la Comisión de Ética del Colegio de Abogados de Puerto Rico; *Hon. Ramón E. Gómez Colón,* Comisionado Especial, en informe.

PER CURIAM:

## I

El 4 de noviembre de 1992, la Sra. Mercedes González Perdomo presentó una querella ante el Colegio de Abogados de Puerto Rico contra Humberto Ramírez Ferrer. En

ella alegó que dicho abogado, fungiendo como dueño de un negocio llamado H.R. Mortgage Corporation, financió una propiedad adquirida por ella ante el notario Luis Rodríguez Bigas, quien representaba a la institución financiera presidida por el querellado. Como parte del financiamiento otorgado, éste dedujo del préstamo la cantidad de siete mil dólares ($7,000), de los cuales dos mil dólares ($2,000) se destinarían al pago de un embargo a favor del Fondo del Seguro del Estado que pesaba sobre la propiedad que habría de adquirirse y cinco mil dólares ($5,000) para la terminación de una segunda planta en dicha propiedad. Sostuvo la querellante que a pesar de habérsele descontado esos dineros del préstamo otorgado, no pudo inscribir su inmueble en el Registro de la Propiedad por no haber sido cancelado el embargo y porque no se terminó la construcción de la segunda planta.

Tras los trámites de rigor, la Comisión de Ética del Colegio de Abogados emitió el correspondiente informe de conducta profesional. Concluyó que el licenciado Ramírez Ferrer había actuado en contravención a los Cánones 23, 37 y 38 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX.([1]) En el informe se señala que el querellado se había comprometido en varias ocasiones, con la querellante y

---

([1]) En lo pertinente, dichos cánones disponen lo siguiente:

(a) Canon 23 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX:

"El abogado no debe adquirir interés o participación alguna en el asunto en litigio que le haya sido encomendado.

"Un abogado no debe adelantar o prometer ayuda financiera a su cliente ..., excepto que puede adelantar el pago de las costas del litigio ... para representar debidamente el caso de su cliente.

"La naturaleza fiduciaria de las relaciones entre abogado y cliente exige que éstas estén fundadas en la honradez absoluta. En particular, debe darse pronta cuenta del dinero u otros bienes del cliente que venga a su posesión ...."

(b) Canon 37 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX:

"La participación del abogado en negocios o actividades de venta de bienes, agencias de cobro, finanzas u otros servicios comerciales propios o pertenecientes a otras personas no es una actividad propia de la buena práctica de la profesión si tal negocio o actividad tiene el fin directo o indirecto de proporcionarle trabajo profesional lucrativo que de otra forma el bufete no hubiese obtenido."

ante la Comisión de Ética, a devolver el dinero retenido indebidamente, cosa que no hizo hasta después de que el Colegio de Abogados presentara la querella formal por orden de este Tribunal.

Específicamente, la Comisión de Ética sostuvo que la conducta del querellado demostraba

> ... un gran menosprecio por la seriedad que debe de acompañar todo acto legal en el que se ve envuelto, además de que es indicativa de que utilizó el engaño y el dolo para inducir a la querellante a obtener a préstamo un dinero adicional que a todas luces no fue dirigido al compromiso contraído en el financiamiento concedido a la querellante. *La actitud antiética del querellado se agrava cuando reconoce la falta cometida y promete devolver el dinero retenido indebidamente, incumpliendo además con la petición que le hiciera a esta Comisión.*([2]) (Énfasis suplido.)

Ante tales circunstancias, el 21 de marzo de 1996, este Tribunal emitió una resolución en la que ordenó la formulación de la correspondiente querella disciplinaria contra el licenciado Ramírez Ferrer. El 10 de abril de 1996 el Colegio de Abogados informó haberla presentado.

El 3 de mayo de 1996 el Colegio de Abogados presentó una moción informativa para expresar que la querellante suscribió un documento, en el cual informó que el abogado querellado le pagó la suma de cinco mil dólares ($5,000), razón por la cual aquella no tiene interés en continuar con la querella.

---

(c) Canon 38 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX:

"Por razón de la confianza en él depositada *como miembro de la ilustre profesión* legal, todo abogado tanto en su vida privada como en el desempeño de su profesión, debe conducirse en forma digna y razonable."

([2]) La determinación de hecho Núm. 9 del Informe de la Comisión de Ética señala que:

"El querellado se comprometió en varias ocasiones con la querellante y ante la Comisión de Etica en devolver la cantidad de cinco mil dólares por concepto del dinero retenido indebidamente a la querellante. *El querellado incumplió con la promesa hecha de devolver dicha cantidad.*" (Énfasis suplido.)     .

Por su parte, el licenciado Ramírez Ferrer presentó la contestación a la querella el 16 de mayo de 1996, para sostener que en vista de que se había satisfecho el pago de la suma debida a la querellante y que a ésta ya no interesaba proseguir con la querella, ella se debía entender por desistida.

El 31 de mayo de 1996 nombramos al Hon. Ramón Gómez Colón para que, en presencia de las partes y en calidad de Comisionado Especial, oyera y recibiera la prueba que éstas pudieran presentarle.

Consecuentemente, el 18 de junio de 1996, el Comisionado Especial señaló para el 5 de agosto de 1996 la celebración de una conferencia con antelación a la vista con el propósito de simplificar las cuestiones litigiosas, considerar la admisión de prueba documental y notificar el nombre y la dirección de los testigos. La conferencia se celebró en la fecha señalada y en ésta el licenciado querellado trajo a la atención del Comisionado Especial la moción del Colegio de Abogados de 3 de mayo de 1996. Ambas partes le informaron al Comisionado que el caso podía someterse por estipulación de documentos sin necesidad de celebrar una vista. El Comisionado le concedió un término de cuarenta y cinco (45) días a las partes para que sometieran una moción conjunta en la que informaran acerca de los documentos que habrían de estipularse y de su interés, si alguno, de que se celebrara la vista en el caso.

A raíz de dicha determinación, el 28 de octubre de 1996, las partes presentaron una estipulación mediante la cual recapitulan el trasfondo fáctico del caso y señalan que el Colegio de Abogados presentó la referida estipulación de hechos a fin de que este Tribunal decida sobre la continuación de los procedimientos, mientras que el querellado, por su parte, solicitó el archivo de la querella.(3)

---

(3) En la estipulación el querellado aceptó que H.R. Mortgage retuvo la cantidad de dinero alegada, que la querellante finalmente recibió los cinco mil dólares

Casi un año después, el 30 de septiembre de 1997, el Comisionado Especial sometió un breve escrito intitulado *Informe*, mediante el cual trae a nuestra atención la referida estipulación y nos señala que ésta "debe considerarse como los hechos probados y a tales efectos la sometemos a la consideración de este Honorable Foro". Examinado el Informe del Comisionado Especial, estamos en posición de resolver.

## II

De entrada es menester señalar que el ejercicio final de nuestra jurisdicción disciplinaria no puede ser limitado por un acuerdo entre la parte querellante y el abogado querellado. La admisión de responsabilidad civil y resarcimiento por parte del abogado a su cliente constituirá un atenuante e, incluso, podrá ser determinante para su archivo, si es que finalmente se insta una querella. *In re Pagán Ayala*, 117 D.P.R. 180 (1986). No obstante, el archivo no será favorecido en aquellas situaciones en las que la negligencia profesional haya ido acompañada de un comportamiento que atente contra el prestigio y la dignidad pública que debe caracterizar al abogado. Íd.

Por otro lado, en numerosas ocasiones hemos señalado que "la confianza entre abogado y cliente, en particular, el escrupuloso manejo de fondos, constituye elemento inseparable que se proyecta no sólo dentro del foro togado puertorriqueño, sino en el respeto y la estima ante la imagen pública". *In re Félix*, 111 D.P.R. 671, 674 (1981). Véanse: *In re Fernández Paoli*, 141 D.P.R. 10 (1996); *In re Báez Torres*, 108 D.P.R. 358 (1979). Asimismo, hemos resuelto que un abogado querellado no se libera de una posi-

---

($5,000.00) solicitados y que el embargo anotado sobre la propiedad en controversia fue cancelado.

ble sanción disciplinaria por el mero hecho de haber devuelto el dinero retenido, o por haberlo retenido sin la intención de apropiarse de él permanentemente. *"La dilación en la devolución de los fondos de por sí es causa suficiente para tomar medidas disciplinarias contra el abogado"*. (Énfasis suplido.) *In re Vázquez O'Neill*, 121 D.P.R. 623, 628 (1988). Véase, además, *In re Arana Arana,* 112 D.P.R. 838 (1982).

El criterio general con respecto a los deberes del abogado para con sus clientes claramente dispone que la relación de abogado y cliente debe fundamentarse en la absoluta confianza, por lo que todo miembro del foro legal le debe a sus clientes un trato profesional caracterizado por la mayor capacidad, la más devota lealtad y la más completa honradez. *In re Córdova González,* 135 D.P.R. 260 (1994). Una actuación contraria a este postulado amerita la separación del abogado del ejercicio de la profesión. *In re Castro Mesa et al.,* 131 D.P.R. 1037 (1992); *In re Sánchez Ferreri*, 115 D.P.R. 40 (1984); *Colón v. All Amer. Life & Cas. Co.*, 110 D.P.R. 772 (1981); *In re Cepeda Parrilla*, 108 D.P.R. 353 (1979). Así, constituye un grave atentado a la relación fiduciaria entre abogado y cliente que aquél retenga una suma de dinero que le adelantó el segundo en concepto de honorarios sin realizar la gestión a la cual se comprometió. Canon 23 del Código de Ética Profesional, supra; *In re Rivera Carmona*, 114 D.P.R. 390 (1983); *In re Arana Arana*, supra.

No obstante lo anterior,

... es esencial distinguir entre la relación abogado-cliente sujeta a los respectivos reglamentos y las otras actividades que con frecuencia los abogados llevan a cabo y que no están relacionadas con su práctica profesional. Recuérdese que un abogado puede dedicarse a actividades ajenas a su profesión *y que nuestra jurisdicción disciplinaria no se extiende a este ámbito a menos que se realice con "el fin directo o indirecto de proporcionarle trabajo profesional lucrativo que de otra forma el bufete no hubiese obtenido"*. (Énfasis suplido.) *In re Belén Trujillo*, 126

D.P.R. 743, 756 (1990). Véanse: *In re Roldán Figueroa*, 106 D.P.R. 4 (1977); *In re Clavell Ruiz*, 106 D.P.R. 257 (1977).

■ El Colegio de Abogados concluyó en su informe que la conducta del Lic. Humberto Ramírez Ferrer repugna los Cánones 23, 37 y 38 del Código de Ética Profesional, *supra*. Sin embargo, el citado Canon 23 presupone una relación de abogado-cliente para que podamos ejercer nuestra jurisdicción disciplinaria, quedando excluida de su alcance aquella conducta no relacionada con la profesión legal. En el caso ante nos, la relación entre la querellante y el querellado en ningún momento adquirió la naturaleza de una relación de abogado-cliente. El licenciado Ramírez Ferrer actuó en sus negocios con la querellante exclusivamente en calidad agente de la casa hipotecaria H.R. Mortgage y no le prestó en ningún momento servicios legales a ésta.

■ Asimismo, el referido Canon 37 establece que la participación del abogado en negocios o actividades comerciales no es propia de la buena práctica de la abogacía únicamente *"si tal negocio o actividad tiene el fin directo o indirecto de proporcionarle trabajo profesional lucrativo que de otra forma el bufete no hubiese obtenido"*. (Énfasis suplido.) Del expediente del caso ante nos no surge que el licenciado Ramírez Ferrer haya utilizado su casa hipotecaria con el fin directo o indirecto de atraer trabajo profesional lucrativo que de otra forma su bufete no hubiese obtenido.

En vista de lo anterior, no podemos adoptar la recomendación del Colegio de Abogados de que sancionemos al querellado por incumplir con los Cánones 23 y 37 del Código de Ética Profesional, *supra*.

■ No obstante, debemos hacer constar que, como parte de la autoridad inherente de este Tribunal para separar a un abogado del ejercicio de la profesión, estamos facultados para ordenar la suspensión de un letrado de la

práctica de la abogacía por causas adicionales a aquellas que ha decretado la Asamblea Legislativa para el desaforo. *Colegio de Abogados de P.R. v. Barney,* 109 D.P.R. 845, 847 (1980); *In re Liceaga,* 82 D.P.R. 252, 255 (1961); *In re González Blanes,* 65 D.P.R. 381, 391 (1945); *In re Tormes,* 30 D.P.R. 267, 268–269 (1922). Esta facultad se extiende incluso a aquellos casos en los que el abogado incurre en conducta impropia que no está directamente relacionada con la práctica de la profesión, cuando dicha conducta le hace indigno de pertenecer al foro. *Colegio de Abogados de P.R. v. Barney,* supra, pág. 847; *In re Liceaga,* supra, págs. 255–256; *In re Abella,* 67 D.P.R. 229, 238 (1947); *In re Tormes,* supra, pág. 270.

■ Dicho esto, coincidimos con lo señalado por el Colegio de Abogados al concluir que la conducta del querellado atentó contra la norma de conducta general dispuesta en el Canon 38 del Código de Ética Profesional, *supra,* que exige la preservación del honor y la dignidad de la profesión. Dicho canon dispone, en su parte pertinente: "Por razón de la confianza pública depositada en el abogado, éste debe de conducirse en forma digna y honorable tanto en su vida privada como en el desempeño de su profesión." Íd. En *In re Coll Pujols,* 102 D.P.R. 313, 319 (1974), señalamos que "[c]ada abogado es un espejo en que se refleja la imagen de la profesión. Sus actuaciones reflejan ante la comunidad las bases del concepto que ésta se forme, no solamente del abogado en particular que actúa, sino también de la clase profesional toda que debe representar con limpieza, lealtad, y el más escrupuloso sentido de responsabilidad". Ciertamente, la retención indebida de cinco mil dólares ($5,000) por parte del querellado, acordada en el contrato de hipoteca para la supuesta terminación de una segunda planta —que nunca se completó— así como su conducta posterior ante el Colegio de Abogados al incumplir en reiteradas ocasiones con la promesa de devol-

ver la cantidad retenida, son indicativas, como bien se señala en el informe, de "un gran menosprecio por la seriedad que debe de acompañar todo acto legal en el que se ve envuelto, además de que es indicativa de que utilizó el engaño y el dolo para inducir a la querellante a obtener a préstamo un dinero adicional que a todas luces no fue dirigido al compromiso contraído en el financiamiento concedido a la querellante". Esta conducta dolosa del querellado se vio agravada por el hecho de que no fue hasta después que el Colegio de Abogados presentara la querella formal por instrucciones de este Tribunal, más de tres y medio (3 ½) años luego de que la querellante le reclamara la devolución de los cinco mil dólares ($5,000) por su incumplimiento, que el querellado devolvió la cantidad retenida indebidamente. Este comportamiento mancilla inaceptablemente la imagen de la profesión y constituye una violación al precepto que le exige a todo abogado conducirse, aún en su vida privada, de forma digna y honorable y es, por lo tanto, suficientemente reprochable como para justificar la suspensión del ejercicio de la profesión por un término de tres (3) meses.

*Se dictará sentencia de conformidad.*

El Juez Asociado Señor Negrón García suspendería por un término no menor de seis (6) meses.