per curiam:
El Lie. Calixto López González (licenciado López González) fue admitido al ejercicio de la abogacía el 18 de septiembre de 1987 y al ejercicio del notariado el 14 de enero de 1988.
Se presentó una querella contra éste, imputándole, entre otras cosas, haber expedido un cheque sin fondos con ánimo de defraudar. Veamos los hechos que dieron pie al ejercicio de nuestra jurisdicción disciplinaria.
I
El 23 de marzo de 2001 la Cooperativa de Ahorro y Crédito de Quebradillas (la Cooperativa) presentó en el Tribunal de Primera Instancia una demanda en cobro de dinero contra el licenciado López González.(1) Alegó, entre otras cosas, que para el 3 de septiembre de 1999 éste había realizado, mediante cheque personal, un pagó de $8,101.44 por un préstamo hipotecario que tenía su esposa con la *570 Cooperativa. Indicó que, con posterioridad a la fecha de dicho pago, al intentar cobrar su acreencia, supo que el referido cheque no tenía fondos suficientes. Indicó que notificó al licenciado López González de este asunto, pero que ninguna de sus gestiones extrajudiciales para cobrar su acreencia tuvo éxito. Intimó que, en vista de la falta de atención del licenciado López González a sus requerimientos, el 20 de enero de 2000 le envió una carta con aviso de recibo mediante la cual le requirió, una vez más, el pago de los $8,101.44. Indicó que el abogado en cuestión hizo caso omiso al pedimento. Señaló que, luego de agotar sus recursos para hacer efectiva su acreencia, presentó una querella contra el licenciado López González en el cuartel de la Policía de Quebradillas. Finalmente, esgrimió que luego de ser citado por la Fiscalía de Arecibo, éste se comprometió con la Cooperativa en satisfacer la referida deuda hipotecaria.
Luego de ser debidamente emplazado, el licenciado López González no contestó la demanda, por lo que se le anotó la rebeldía. Después de celebrado juicio en rebeldía, el Tribunal de Primera Instancia declaró “con lugar” la demanda interpuesta por la Cooperativa, condenando al abogado al pago de los $8,101.44, los intereses acumulados al 6%, las costas y los gastos del proceso, así como $800 en concepto de honorarios de abogado. En conformidad con el Canon IV de Etica Judicial,(2) el foro primario ordenó se nos notificara de la sentencia contra el licenciado López González.
El 10 de mayo de 2002 emitimos una resolución, remitiendo la referida sentencia al Procurador General para investigación e informe.
El 9 de abril de 2003 el Procurador General emitió un informe en el que concluyó que el licenciado López González había infringido los Cánones 35 y 38 del Código de *571 Ética Profesional.(3) Sostuvo su conclusión, entre otras cosas, en que la conducta de dicho abogado no había sido sincera, por cuanto éste conocía o debía haber conocido que la cuenta bancaria de la que se emitió el referido cheque personal, no tenía fondos suficientes. Señaló, como agravante, que luego de haberse comprometido con la Fiscalía y con la Cooperativa en realizar el pago de la deuda hipotecaria, el abogado había incumplido. Finalmente, esgrimió que dicho letrado había tenido tiempo suficiente para corregir sus actuaciones y no lo hizo.
El 5 de junio de 2003 el licenciado López González presentó su contestación al informe. Indicó, entre otras cosas, que para la fecha en que realizó el pago mediante cheque, esto es, el 3 de septiembre de 1999, había pagado $42,000 a la Cooperativa por otra deuda hipotecaria que tenía con ésta. Puntualizó que comenzó a realizar gestiones conducentes a pagar la cantidad consignada en el cheque personal carente de fondos, pero que para octubre de 1999, esto es, un mes después de ser notificado de la insuficiencia de fondos del referido cheque, su padre sufrió un derrame cerebral y falleció un mes después. Indicó, además, que esta situación perjudicó seriamente su práctica profesional y que, a pesar de haber realizado múltiples gestiones para satisfacer la cantidad adeudada a la Cooperativa, no había podido reunir el dinero. Señaló que no contestó la demanda porque los hechos allí alegados eran ciertos y que los actos consignados en el informe del Procurador no estaban reñidos con la práctica de la profesión. Solicitó el archivo de la queja.
El 23 de junio de 2003 emitimos una resolución, instruyendo al Procurador General a que presentara una querella contra el licenciado López González. El 13 de noviembre de 2003 el Procurador General presentó la querella mediante la cual le imputó los cargos siguientes:
*572 CARGO I
El Ledo. Calixto López González incurrió en conducta profesional en violación al Canon 38 del Código de Etica Profesional, 4 L.P.R.A. Ap. IX C. 38, que impone el deber de exaltar el honor tanto en la vida privada como en el desempeño de la misma.
CARGO II
El Ledo. Calixto López González incurrió en conducta en violación al Canon 35 del Código de Ética Profesional, 4 L.P.R.A. AP. IX C. 35, que impone el deber de sinceridad en todas las facetas de la vida del abogado. Querella del Procurador General, 13 de noviembre de 2005, págs. 5 y 8.
El 28 de enero de 2004 el abogado de epígrafe presentó su contestación a la querella. Esbozó, entre otras cosas, que los hechos sobre el cual versaban los cargos presentados no estaban relacionados con sus funciones propias de abogado, ni se trataba de un acto de negocio común de trascendencia jurídica, sino más bien un acto realizado en su faceta de ciudadano común tendente a saldar una deuda personal. Negó haber violado los Cánones 35 y 38 del Código de Etica Profesional, supra, ya que, a su entender, en todo momento se esforzó al máximo de su capacidad por exaltar la profesión de la abogacía. Intimó que en todas las profesiones, incluyendo la profesión de abogado, existen personas que, en algún momento de sus vidas y por razones fuera de su control, se ven incapacitadas de cumplir con sus responsabilidades económicas. Argüyó, además, que aunque era cierto que el cheque emitido no tenía fondos cuando se pretendió hacer efectivo, no significaba que no los tuviera cuando fue girado a favor de la Cooperativa. El querellado expuso que su práctica profesional se había afectado gravemente después del fallecimiento de su padre, razón por la cual había tenido que acogerse a un procedimiento de quiebra en el Tribunal Federal para el Distrito de Puerto Rico.(4) Finalmente, plan *573 teó que desaforar a un abogado por no poder pagar sus cuentas personales equivaldría a ignorar la realidad económica por la que atraviesa Puerto Rico.
El 28 de abril de 2004 designamos Comisionada Especial a la Lie. Ygrí Rivera de Martínez para recibir y evaluar la prueba que presentarían las partes.
Luego de varias incidencias procesales, el 31 de julio de 2006 la Comisionada Especial rindió un informe mediante el cual concluyó que el querellado había infringido los Cánones de Etica Profesional reseñados por el Procurador General. Concluyó que el licenciado López González infringió el Canon 38 del Código de Etica Profesional, supra, ya que actuó con indiferencia ante las múltiples solicitudes que le hiciera la Cooperativa para que realizara el pago de los $8,101.44. Reseñó, además, que el querellado incumplió en pagar la deuda hipotecaria después de haberse comprometido al pago con la Fiscalía de Arecibo. Intimó que, al querellado no contestar la demanda interpuesta en su contra ni comparecer a la vista en rebeldía, la Cooperativa tuvo que incurrir en gastos extraordinarios para poder cobrar su acreencia. Concluyó que el querellado pudo haber sido más diligente en su proceder, aun con los problemas económicos por los que atravesaba.
En cuanto al segundo cargo imputado, relativo al Canon 35, supra, la Comisionada Especial puntualizó que el abogado en cuestión demostró poca sinceridad para con la Cooperativa al pretender saldar una deuda con un cheque que no tenía fondos. Concluyó que el licenciado López González no fue sincero al comprometerse con el Ministerio Público en reponer la cantidad del cheque sin fondos, evitando así un proceso penal en su contra. Indicó que, aun cuando el abogado en cuestión desconociera que el cheque emitido carecía de fondos suficientes, desatendió los requerimientos de la Cooperativa en múltiples ocasiones, causando así que ésta tuviera que recurrir a la presentación de una acción judicial.
Por otra parte, la Comisionada Especial indicó, como *574 circunstancias atenuantes, que en diez y nueve años de práctica profesional era la primera vez que el abogado de epígrafe se enfrentaba a una acción disciplinaria. De igual manera, esgrimió que poco tiempo después de que ocurrieran los hechos que dan pie a la acción de marras, el querellado se vio afectado emocional y económicamente tras el fallecimiento de su padre como consecuencia de un derrame cerebral. Finalmente, puntualizó que el licenciado López González es una persona que goza de una buena reputación entre los miembros de la profesión.
Con el beneficio de la discusión que antecede, procede resolver el procedimiento disciplinario que nos ocupa. Veamos.
II
Procede discutir, en primer término, el cargo que le imputa al querellado haber infringido el Canon 35 del Código de Ética Profesional, supra.
El Canon 35, supra, referente a la sinceridad y honradez que deben desplegar los miembros de la profesión jurídica, dispone, en lo que nos atañe, de la manera siguiente:
La conducta de cualquier miembro de la profesión legal ante los tribunales, para con sus representados y en las relaciones con sus compañeros debe ser sincera y honrada.
No es sincero ni honrado el utilizar medios que sean inconsistentes con la verdad ni se debe inducir al juzgador a error utilizando ^artificios o una falsa relación de los hechos o del derecho. (Énfasis suplido.)
Este Foro se ha expresado extensamente sobre la aplicación de dicho canon a ciertas conductas desplegadas por miembros de la profesión que estamos obligados a custodiar. Hemos expresado que el Canon 35, supra, exige primeramente que la conducta de todo miembro de la profesión, ante los tribunales, debe ser sincera y honrada. Esto *575 en virtud de que “[t]odo el entramado de nuestro sistema judicial se erige sobre la premisa de que los abogados, sobre quienes recae principalmente la misión de administrar la justicia, han de conducirse siempre con integridad ante los foros judiciales”. (Énfasis suplido.)(5) Por razón de la confianza depositada en él como miembro de la ilustre profesión legal, todo abogado, tanto en la vida privada como en el desempeño de su profesión, debe conducirse de forma digna y honorable.(6)
Si bien hemos indicado que el referido canon aplica en situaciones propias de la vida privada del abogado, que no están relacionadas con sus actuaciones como jurista, hemos manifestado que el poder para disciplinar al amparo del Canon 35, supra, no es irrestricto ni debe ser ejercitado como si fuéramos verdugos de nuestra clase togada.(7) Aun cuando en innumerables ocasiones este Tribunal se ha expresado en torno a la necesidad de que todo miembro de la clase togada despliegue una conducta que exalte el honor y la dignidad de su profesión, siempre he-mos sido enfáticos al señalar que “no nos incumbe cualquier tipo de conducta privada del abogado, sino sólo aquella que le hace indigno de pertenecer al foro”. (Énfasis suplido.)(8) Al enfrentarnos a un procedimiento disciplinario, “es necesario e indispensable que nos preguntemos si la conducta que se le imputa al abogado verdaderamente le hace indigno de pertenecer al foro”.(9)
Luego de un examen minucioso y objetivo de los hechos de este caso, concluimos que el querellado no infringió el Canon 35 del Código de Ética Profesional, supra. Veamos.
*576 Surge de la relación fáctica que antecede que el querellado expidió un cheque personal —que luego resultó no tener fondos— en gestiones de su vida privada no relacionadas a su práctica profesional. La deuda hipotecaria que el querellado pretendió saldar con el referido cheque era en calidad de cliente de la Cooperativa. Cabe destacar que no surge del expediente que al momento de emitir el cheque el querellado haya tenido la intención de defraudar a la Cooperativa o de que conociera que su cuenta bancaria no tenía fondos suficientes para saldar la deuda, máxime cuando en esa misma fecha —el 3 de septiembre de 1999— pagó a la Cooperativa, mediante cheque, alrededor de $10,000 en concepto de la deuda hipotecaria de su esposa. Por otra parte, conviene destacar que del expediente surge que fue la propia Cooperativa quien canceló y le entregó al querellado el pagaré original que evidenciaba la deuda hipotecaria antes de intentar cobrar el cheque por los $8,101.44. Dicha actuación presumiblemente obedeció a la buena relación comercial que existía entre ambos. Asimismo, es de significativa importancia destacar que en ningún momento se presentó una denuncia penal contra el querellado. No hay evidencia en el expediente para concluir que el abogado de epígrafe no fue sincero con los tribunales o, de otra forma, con sus compañeros abogados. Tampoco surge que éste haya tenido la intención o el ánimo de cometer fraude contra la Cooperativa al expedir el cheque personal por los $8,101.44.
De acuerdo con la discusión que antecede, concluimos que el querellado no violó el Canon 35 del Código de Etica Profesional, supra.
Por otro lado, el Canon 38 del Código de Ética Profesional, supra, preceptúa, en lo aquí pertinente, de la forma siguiente:
El abogado deberá esforzarse, al máximo de su capacidad, en la exaltación del honor y dignidad de su profesión, aunque el así hacerlo conlleve sacrificios personales y debe evitar hasta la apariencia de conducta profesional impropia. En su conducta como funcionario del tribunal, deberá interesarse en *577 hacer su propia y cabal aportación hacía la consecución de una mejor administración de la justicia. ...
Por razón de la confianza en él depositada como miembro de la ilustre profesión legal, todo abogado, tanto en su vida privada como en el desempeño de su profesión, debe conducirse en forma digna y honorable. (Énfasis suplido.)
Al interpretar el antedicho canon, hemos expresado que no existe dicotomía alguna entre la vida cotidiana del ciudadano que es abogado y el ejercicio de su profesión, debido a que los cánones del Código de Ética Profesional se aplican tanto a la vida privada como a la vida profesional de un abogado. Las responsabilidades éticas de los miembros de la profesión de abogado no tienen un horario de trabajo. Ahora bien, “no nos incumbe cualquier tipo de conducta privada del abogado”. (Énfasis suplido.)(10)
De igual manera, hemos sostenido que los procedimientos disciplinarios no tienen como fin “castigar al querellado por la falta cometida, ‘sino más bien proteger a la comunidad y a la profesión mediante una investigación de sus condiciones morales para determinar si puede continuar en la práctica [profesionalJ ”. (Corchetes en el original y énfasis suplido.)(11) No podemos ignorar el hecho de que al iniciar un procedimiento disciplinario, el norte que en todo momento debe guiar a este Foro es el interés de proteger la comunidad y la profesión en general. En todos los casos en que este Tribunal ha ejercitado su poder inherente para disciplinar a un abogado por conducta privada impropia, hemos analizado los hechos particulares de cada caso para determinar si la conducta imputada afecta las condicionas morales del querellado.(12)
Surge de la relación fáctica que antecede que, aun cuando la conducta desplegada por el querellado, en trámites de su vida privada, podría interpretarse como repro *578 chable, ésta no atenta contra la comunidad o con la profesión en general. Surge del expediente, además, que para la fecha en que el querellado expidió el cheque por los $8,101.44, la Cooperativa había cobrado, por otros medios —entre éstos, un cheque por $9,900— alrededor de $30,000 en concepto de la deuda hipotecaria que la esposa del querellado tenía con ésta. Esto, a nuestro entender, propició que la propia Cooperativa le entregara al letrado el pagaré cancelado que evidenciaba la deuda aquí en controversia.
Asimismo, debemos tomar en consideración que un mes después de que el licenciado López González emitiera el cheque personal en cuestión, su padre sufrió un derrame cerebral que le ocasionó la muerte en noviembre de 1999, afectando seriamente su estado emocional, su práctica profesional y su economía en general. Resulta forzoso concluir que dicho evento afectó sus gestiones para pagarle la cantidad adeudada a la Cooperativa.
Finalmente, debemos recalcar que nuestra función disciplinaria no puede operar ciegamente o en el vacío ni estar ajena a las circunstancias particulares y personales que afectan el rendimiento profesional de los miembros de la clase togada. Esto, claro está, es una determinación que se hace evaluando los méritos de cada caso.
Así como este Foro es responsable de velar por que los letrados cumplan con los cánones del Código de Etica Profesional, también es responsable de que, luego de superar eventos lamentables en la vida privada de los abogados, éstos retomen su práctica de forma cabal y satisfactoria.
Surge del expediente que en diez y nueve años de práctica profesional, esta es la primera vez que el querellado se enfrenta a un proceso disciplinario. Encontrarlo incurso en conducta violatoria de los cánones del Código de Ética Profesional, por actos de su vida privada, no tendría el efecto de proteger a la comunidad o, de otra forma, proteger a la clase togada. La conducta del querellado no lo hace indigno de pertenecer al foro.
*579 III
En virtud de lo antes expuesto, consideramos que en el presente caso la conducta del licenciado López González en su vida personal, aunque reprochable, ciertamente no lo hace indigno de ejercer la profesión legal en nuestra jurisdicción. Concluir lo contrario tendría el efecto, tal como concluyéramos en In re Vélez Lugo, supra, de ampliar excesivamente el alcance de los postulados contenidos en los Cánones 35 y 38 del Código de Ética Profesional, supra. Ordenamos el archivo de la querella presentada contra el licenciado López González.

Se dictará sentencia de conformidad.

El Juez Presidente Señor Hernández Denton disintió con una opinión escrita. El Juez Asociado Señor Rebollo López disintió sin opinión.

 Civil Núm. AICI200100544.

 4 L.P.R.A. Ap. IV-A.

 4 L.P.R.A. Ap. IX.

 Surge del expediente que el foro federal desestimó la petición de quiebra presentada por el querellado.

 In re Montañez Miranda, 157 D.P.R. 275, 284 (2002), citando a In re Currás Ortiz, 141 D.P.R. 399 (1996).

 In re Irizarry, González, 151 D.P.R. 916 (2000).

 In re Vélez Lugo, 162 D.P.R. 735 (2004).

 íd., pág. 740, citando a In re Sepúlveda, Casiano, 155 D.P.R. 193, 206-207 (2001). Véase, además, In re Ramírez Ferrer, 147 D.P.R. 607, 615 (1999).

 In re Vélez Lugo, supra, pág. 741.

 In re Sepúlveda, Casiano, supra, págs. 206-207.

 In re Barreto Ríos, 157 D.P.R. 352, 356 (2002), citando a In re Liceaga, 82 D.P.R. 252, 255 (1961).

 In re Vélez Lugo, supra.