per curiam:
El Ledo. Héctor L. Ayala Vega fue admitido al ejercicio de la abogacía el 26 de junio de 1985 y a la práctica de la notaría el 25 de marzo de 1986. El 29 de junio de 1990 renunció de forma voluntaria a la práctica de la notaría y fue readmitido posteriormente como notario el 13 de junio de 1991.
Mientras se desempeñó como abogado, el licenciado Ayala Vega representó al Sr. Juan Alexis Vázquez Pérez (Vázquez Pérez) durante un procedimiento criminal. Por las actuaciones realizadas durante ese proceso, el Sr. Juan C. Vázquez Pérez (quejoso), hermano del señor Vázquez Pérez, presentó en 2007 una queja (Queja Núm. 2007-034) ante la Oficina del Procurador General por alegadas viola-ciones a los cánones del Código de Ética Profesional.(1)
El quejoso sostuvo que contrató a la Sra. Ana L. Vega Morales para representar a su hermano en un caso de vio-lencia doméstica.(2) Esta no pudo continuar la representa-ción legal, por lo que lo refirió al licenciado Ayala Vega. El quejoso sostuvo que el letrado, quien es primo de un hijo de la perjudicada, fue negligente durante la representación legal de su hermano, el señor Vázquez Pérez, y no tramitó una apelación criminal a pesar de habérsele pagado un adelanto para ello. Esta queja fue archivada por la Oficina del Procurador General, conforme surge de la carta de 1 de agosto de 2007.
Inconforme con el archivo de su queja, el quejoso acudió ante esta Curia. Como consecuencia, el asunto fue referido *675 a la Comisión de Ética del Colegio de Abogados de Puerto Rico. Esa Comisión presentó el 20 de abril de 2010 un in-forme de investigación en el que recomendó archivar la queja presentada por el quejoso. De este surge que el le-trado remitió al quejoso un cheque por $1,961.70 a favor del señor Vázquez Pérez, para la devolución de honorarios no devengados.(3)
El 17 de mayo de 2010, el quejoso objetó el informe de investigación. Al así hacerlo, acompañó una certificación del Tribunal de Apelaciones de la cual surge que el licen-ciado Ayala Vega no presentó un recurso de apelación como acordado. Posterior al examen de las expresiones del que-joso, el 4 de junio de 2010, este Tribunal refirió el asunto para investigación a la Oficina del Procurador General. El 24 de marzo de 2011, la Oficina del Procurador General emitió un informe detallado sobre los pormenores de la queja presentada.
Del informe emitido por la Oficina del Procurador General surge que, luego de escuchar los procedimientos du-rante el juicio, no existe prueba alguna para concluir que el letrado no defendió diligentemente a su cliente por la rela-ción lejana con la perjudicada. Sin embargo, la Oficina del Procurador General sostuvo que el licenciado Ayala Vega incurrió en conducta violatoria de los cánones del Código de Ética Profesional.
Específicamente, la Oficina del Procurador General se-ñaló que el licenciado Ayala Vega cobró al quejoso por pre-sentar una apelación que no perfeccionó conforme a dere-cho y cuyo dinero no fue devuelto inmediatamente. El letrado invocó que desistió de la apelación y presentó una moción para solicitar la rebaja de la sentencia impuesta. Sin embargo, nunca presentó esa moción. Por estas actua-ciones, la Oficina del Procurador General entendió que el *676 licenciado Ayala Vega pudo incurrir en violación a los Cá-nones 18, 20, 23, 35 y 38 del Código de Ética Profesional, 4 LPRAAp. IX. De igual forma, señaló que si el letrado per-mitió el pago de honorarios de abogado a la señora Vega Morales, luego de su desaforo, pudo incurrir en violación a los Cánones 33 y del Código de Ética Profesional, supra. En su informe la Oficina del Procurador General resaltó una moción intitulada Moción Urgente Solicitando Per-miso para Regrabar presentada ante el Tribunal de Pri-mera Instancia por el abogado en la cual alude incorrecta-mente a una apelación ante esta Curia, por lo que entiende que este realizó una representación falsa constituyéndose una violación al Canon 35 del Código de Ética Profesional, supra.
El letrado presentó sus contenciones al informe emitido por la Oficina del Procurador General. En primer lugar, indicó que el no continuar con el trámite apelativo de un caso no significa que sea incompetente. Señaló que las par-tes seleccionaron una estrategia de litigio que no prosperó. En cuanto a la Moción Urgente Solicitando Permiso para Regrabar, argüyó que la solicitud de regrabación estaba relacionada con la queja presentada por el quejoso, por lo que ello constituye un simple error al redactar el escrito. En torno a la devolución de honorarios, el licenciado Ayala Vega sostuvo que el pago recibido no fue en un adelanto de honorarios para apelación, sino por la devolución de los gastos incurridos en copias y transcripciones de los inci-dentes relacionados a una reconsideración presentada en el caso del señor Vázquez Pérez, por lo que solamente los devolvió en un acto de buena fe. Por último, el letrado sos-tuvo que desconocía que el quejoso estuviese realizando pagos a favor de la señora Vega Morales y que no existe algún hecho independiente que pueda constituir una viola-ción al Canon 38 del Código de Ética Profesional, supra.
Atendidos los escritos presentados, el 22 de julio de 2011 instruimos a la Oficina del Procurador General a presentar *677 la querella correspondiente. La querella fue presentada el 14 de noviembre de 2011 con cargos por violación a los Cánones 18, 20, 23, 33, 35 y 38 del Código de Ética Profesional, supra. El licenciado Ayala Vega contestó y negó los cargos imputados en la querella.
El 6 de junio de 2012, con la aprobación de este Tribunal, la querella fue enmendada para incluir un cargo adi-cional por violación al Canon 35 del Código de Ética Profe-sional, supra, debido a alegadas inconsistencias en los testimonios del togado, con relación al cobro de los $1,961.70. Los trámites fueron asignados a una comisio-nada especial, quien recibió la prueba y rindió el respectivo informe el 3 de abril de 2013.
La comisionada especial, Leda. Crisanta González Seda, hizo un recuento de los procesos acaecidos durante el trá-mite de la querella. Con relación a los cargos presentados, determinó que el letrado instruyó al quejoso a pagar, el 18 de mayo de 2006, $400 a la señora Vega Morales. Del in-forme presentado surge que la Comisionada Especial pre-cisó que el quejoso y el abogado acordaron presentar una apelación ante el Tribunal de Apelaciones con relación a la causa criminal en la que fue hallado culpable el hermano del quejoso. Para ello, pactaron honorarios de $5,000, de los cuales el quejoso adelantó $1,961.70. La comisionada especial concluyó que esta suma fue por el pago de la ape-lación y descartó que ello respondiera, como alegó en oca-siones el abogado, a un reembolso por los gastos incurridos en un alegado trámite de reconsideración. El adelanto pa-gado fue devuelto en 2009. Además, la comisionada especial precisó que mediante moción de 3 de diciembre de 2007, el licenciado Ayala Vega solicitó al Tribunal de Pri-mera Instancia regrabar los procedimientos. Al así hacerlo, aseveró: “[e]n el caso de epígrafe hemos radicado una ape-lación en el Tribunal Supremo y por esto estamos solici-tando la regrabación de los procedimientos del juicio del 5 de julio de 2006 [...]”. Véase Moción Urgente Solicitando *678 Permiso para Regrabar, presentada ante el Tribunal de Primera Instancia el 3 de diciembre de 2007.
Acto seguido, y luego de una exposición del derecho apli-cable, la Comisionada Especial razonó que los hechos ex-puestos denotan que el licenciado Ayala Vega incurrió en las violaciones imputadas a los cánones de ética profesional.
Las partes no objetaron el informe de la comisionada especial, por lo que el caso quedó sometido el 2 de agosto de 2013.(4) Examinados los hechos ante nuestra considera-ción, estamos en posición de resolver.
I
Al licenciado Ayala Vega se le imputa haber violado los Cánones 18, 20, 23, 33, 35 y 38 del Código de Ética Profesional, supra. Veamos si incurrió en las alegadas violaciones.
*679 El Canon 18 del Código de Ética Profesional, supra, impone al abogado el deber de desempeñarse en su representación de forma competente, capaz y diligente. De igual manera, obliga al abogado a defender los intereses de su cliente con el más profundo saber y habilidad, por lo que sus actuaciones deben ser adecuadas y responsables para la profesión jurídica general. In re Rivera Ramos, 178 DPR 651, 664 (2010); In re Pereira Esteves, 131 DPR 515, 522 (1992). Una infracción a este canon perjudica directamente los intereses del cliente. Por ello, la ética profesional le exige al abogado un conocimiento vasto sobre las normas jurídicas y que actúe en consecuencia. Así, incurre en una violación ética aquel abogado que atiende indebidamente la causa que le fue encomendada. R.L. Vigo, Ética del abogado; conducta procesal indebida, 2da ed., Buenos Aires, Ed. Lexis Nexis, 2003, pág. 103. El letrado falta a su deber de diligencia cuando no realiza las gestiones que le fueron encomendadas en el momento oportuno, de la forma adecuada y sin retrasos. S. Steidel Figueroa, Ética y responsabilidad del abogado, San Juan, Pubs. JTS, 2010, pág. 179; In re Vilches López, 170 DPR 793, 798 (2007).
De otra parte, la importancia de mantener la confianza en la profesión legal sobre los asuntos económicos de un representado es de gran relevancia. A estos efectos, el Canon 20 del Código de Ética Profesional, supra, establece el procedimiento que debe seguir un abogado al renunciar a la representación legal que ostenta, lo cual incluye el deber de reembolsar inmediatamente cualquier cantidad que se haya pagado por adelanto en honorarios por servicios que no se han prestado. Canon 20 del Código de Ética Profesional, supra; In re Rodríguez Lugo, 175 DPR 1023, 1030-1031 (2009). En igual medida, el Canon 23 del Código de Ética Profesional, supra, requiere al abogado que dé pronta cuenta del dinero u otros bienes del cliente y no mezclarlos con los propios. In re Ríos Ríos, 175 DPR 57, 72-73 (2008). Así, la retención de cualquier canti- *680 dad de dinero, perteneciente a su cliente que esté en pose-sión del abogado trastoca e infringe los postulados del Canon 23 del Código de Ética Profesional, supra. In re Rivera Rozada, 176 DPR 215, 225 (2009).
El solo hecho de que el togado retenga fondos pertenecientes a un cliente justifica una sanción disciplinaria independientemente de si el abogado devolvió tal dinero y que su retención hubiere haya sido sin la intención de apropiárselos. In re Vega Quintana, 188 DPR 536 (2013); In re Ríos Ríos, supra, pág. 73; In re Rivera Irizarry, 155 DPR 687, 693 (2001). Por ello, constituye un grave atentado a la relación fiduciaria que el abogado retenga una suma de dinero que le adelantó su representado en concepto de honorarios sin realizar la gestión a la cual se comprometió. In re Torres Viñals, 180 DPR 236, 246 (2010); In re Ramírez Ferrer, 147 DPR 607, 614 (1999).
Como es sabido, ejercer la profesión de abogado constituye un gran privilegio que conlleva unas responsabilidades. Ante ello, el Canon 33 del Código de Ética Profesional, supra, impone a todo abogado el deber de evitar “que personas no autorizadas practiquen la abogacía o la notaría”. Canon 33 del Código de Ética Profesional, supra. Además, el canon dispone claramente que es impropio de un abogado el “permitir o facilitar a una persona o entidad que no esté autorizada a ejercer la abogacía o el notariado que cobre total o parcialmente por los servicios profesionales o notariales prestados por el abogado”, íd. De acuerdo con ello, este Tribunal enfáticamente ha expresado que incurre en conducta violatoria al Canon 33 del Código de Ética Profesional, supra, aquel “jurista que comparte sus honorarios con una persona que no es abogado”. (Énfasis suplido). In re Franco Rivera, 169 DPR 237, 271 (2006). Véase, además, In re Rochet Santoro, 174 DPR 123, 133-134 (2008).
*681 Con relación al Canon 35 del Código de Ética Profesional, supra, y en lo pertinente, este impone a cualquier miembro de la profesión legal actuar con sinceridad y honradez. Ello, incluye que el abogado se ajuste a la franqueza de los hechos al redactar documentos y presentar sus causas. No es sincero y honrado utilizar medios que sean falsos. In re Rochet Santoro, supra, pág. 137; In re Marini Román, 165 DPR 801, 807 (2005). Tampoco se debe inducir a error mediante la utilización de artificios o de una falsa relación de hechos o Derecho. Por ende, el abogado que provee al tribunal información falsa o que no se ajuste a la verdad incumple con este canon. In re Nieves Nieves, 181 DPR 25, 41 — 42 (2011); In re Zapata Torres, 176 DPR 545, 554 (2009). No es defensa a la inobservancia de este compromiso el que no se haya obrado de mala fe, deliberadamente o sin intención de engañar. In re Rosado Nieves, 189 DPR 259 (2013); In re Muñoz Fernós, 184 DPR 679, 686-687 (2012). Lo fundamental es que se falte a los valores de honradez y veracidad, pilares de la profesión legal. In re Nieves Nieves, supra, pág. 43; In re Astacio Caraballo, 149 DPR 790, 799 (1999).
Por último, el Canon 38 del Código de Ética Profesional, supra, “preceptúa una máxima de suma importancia para el ordenamiento deontológico de la profesión legal”. In re Báez Genoval, 175 DPR 28, 38 (2008). Concretamente, este canon enfatiza los valores principales que deben prevalecer al ejercer la profesión de la abogacía: la dignidad y el honor. Con relación a este canon, hemos establecido que “[l]a justicia debe ser inmaculada, tanto en su realidad interior como en la percepción externa. [...] Cuando la conducta que se le imputa a un abogado demuestra que no se conduce de forma digna y honorable, viola el citado Canon 38”. In re Pons Fontana, 182 DPR 300, 310 (2011). Todos los miembros de nuestra profesión deben estar en una constante introspección, analizando que su conducta sea armoniosa con la responsabilidad *682 ética y moral que permea el ejercicio de la abogacía. “[L]os abogados son el espejo donde se refleja la imagen de la profesión. Por tal razón, estos deben actuar con el más es-crupuloso sentido de responsabilidad que impone la función social que ejercen”. In re Nieves Nieves, supra, pág. 45. Véase In re Gordon Menéndez, 183 DPR 628, 642-643 (2011).
II
Nos corresponde determinar si el licenciado Ayala Vega incurrió en las violaciones imputadas. A la luz de los he-chos determinados por la Comisionada Especial y el exa-men del expediente ante nuestra consideración, no duda-mos que el letrado infringió los Cánones 18, 20, 23, 33, 35 y 38 del Código de Etica Profesional, supra.(5)
El quejoso contrató los servicios del letrado para que representara a su hermano durante un proceso criminal por razón de que la señora Vega Morales no podía conti-nuar con la representación legal que ostentaba. Así las co-sas, el letrado compareció ante el foro de instancia como abogado del hermano del quejoso en una causa criminal. Alegó que no cobró honorarios y que lo único que recibió fue una suma para la presentación de una apelación. Du-rante ese proceso, y conforme los hechos probados y no rebatidos, el letrado instruyó al quejoso a pagar dinero a la señora Vega Morales, quien no estaba autorizada a ejercer la abogacía. El quejoso actuó conforme a lo instruido y pagó a la señora Vega Morales al finalizar las comparecen-cias que el letrado hiciera en la representación de su hermano. Al así actuar, el licenciado Ayala Vega violó el *683 Canon 33 del Código de Ética Profesional, supra, ya que compartió honorarios con una persona que no era abogado.
De otra parte, y aunque la Comisionada Especial enten-dió que las gestiones realizadas beneficiaron al imputado durante los procedimientos, esta determinó que el quejoso y el abogado acordaron presentar una apelación por el caso en el cual su hermano fue hallado culpable, la cual no fue presentada. Indicó, que el licenciado Ayala Vega y el que-joso pactaron $5,000 en honorarios. El letrado solicitó al quejoso un adelanto por $1,961.70, los cuales fueron pagados. A pesar de lo acordado, el 31 de octubre de 2006, el licenciado Ayala Vega se limitó a presentar la apelación ante el Tribunal de Primera Instancia, Sala Superior de Guayama. El letrado nunca gestionó un trámite posterior en cuanto a la apelación como tampoco la notificó al Tribunal de Apelaciones. Por lo tanto, la apelación nunca se per-feccionó conforme a derecho. Además, no informó sobre este hecho al quejoso ni a su representado. A solicitud del quejoso, el Tribunal de Apelaciones expidió una certifica-ción el 12 de febrero de 2009 de la que se desprende que nunca se presentó recurso alguno ante ese foro.
Como consecuencia del trámite inoficioso realizado, el señor Vázquez Pérez no pudo ejercer su derecho y deseo de revisar la sentencia impuesta, la cual advino final y firme. En su defensa, el licenciado Ayala Vega alegó que la falta de notificación al foro intermedio fue parte de una estrate-gia de litigio para conseguir una rebaja de la pena impuesta. Señaló que las partes acordaron solicitar una reconsideración ante el foro primario y que desistieron de la apelación presentada. Sin embargo, los acontecimientos acaecidos reflejan lo contrario y no sostienen lo alegado.
La prueba examinada demuestra que el letrado nunca solicitó una reconsideración para rebajar la pena impuesta posterior a la sentencia o a la apelación.(6) Tampoco realizó *684 trámite alguno que sostuviera sus alegaciones en cuanto a que ello era parte de una estrategia de litigio. Más aún, el licenciado Ayala Vega desplegó una conducta deshonrosa. En un principio el letrado afirmó ante este Tribunal, y con relación a la queja, haber presentado la apelación, según solicitada y sostuvo osadamente que el quejoso faltaba a la verdad al indicar que “[l]a apelación se hizo; el tribunal de apelaciones tiene el caso ante su consideración”. Véase Carta de 21 de noviembre de 2007 del licenciado Ayala Vega ante este Tribunal. Igualmente, indujo a la creencia de que había cumplido con lo acordado cuando el 15 de julio de 2009 afirmó ante la Comisión de Ética del Colegio de Abogados que “[e]n este caso, luego de haber recibido el adelanto de $1,961.70 de la suma de $5,000 pactada por la apelación, el licenciado Ayala Vega presentó el escrito de apelación en la Secretaría del Tribunal de Guayama el 31 de octubre de 2006”. Sin embargo, luego argumentó que la apelación nunca se perfeccionó como parte de una estrate-gia de litigio. La conducta mendaz del letrado incluyó las aseveraciones con relación al adelanto de dinero pagado por el quejoso. Por una parte, el letrado manifestó que el dinero constituyó un anticipo para presentar la apelación y, por otra, que la cantidad pagada fue un reembolso por gastos incurridos relacionados a una reconsideración de la sentencia impuesta contra el hermano del quejoso.(7) No *685 obstante, no existe prueba alguna de que el letrado haya presentado la reconsideración.
Esa misma conducta fue desplegada ante el Tribunal de Primera Instancia cuando el 3 de diciembre de 2007 el li-cenciado Ayala Vega presentó una Moción Urgente Solici-tando Permiso para Regrabar, en la cual informó que “he-mos radicado una apelación ante el Tribunal Supremo” y por eso solicitaba la grabación de los procedimientos. El letrado aduce que ello consistió en un error y que la solici-tud fue como consecuencia de la queja presentada por el quejoso. El hábito demostrado nos lleva a concluir lo contrario.
Ciertamente, las manifestaciones del togado constitu-yen una falsa relación de hechos con la intención de justi-ficar sus actuaciones ante la querella presentada. De esta forma, el licenciado Ayala Vega actuó de forma deshonrosa con la única finalidad de salvar su causa. Por un lado ase-guró haber cumplido con la encomienda encargada, mien-tras, a su vez, sostenía que acordó la presentación de una reconsideración que nunca hizo. Igualmente, defendió la retención del dinero adelantado como parte de la presenta-ción del recurso apelativo realizado para luego sostener que constituyó la devolución de gastos incurridos por el *686 trámite de la alegada reconsideración post sentencia. Las versiones del licenciado Ayala Vega resultan incompatibles con sus propias expresiones y con la prueba presentada.
Por último, el letrado retuvo los $1,961.70 adelantados por el quejoso y no fue hasta el 2009 que el licenciado Ayala Vega los devolvió e indicó: “[e]n señal de buena fe se in-cluye un cheque por $1,961.70 a favor de Juan Alexis Váz-quez Pérez en concepto de devolución de honorarios profe-sionales no devengados”. Véase Misiva de 15 de julio de 2009 ante la Comisión de Ética del Colegio de Abogados.
No cabe duda de que el licenciado Ayala Vega dejó de actuar de forma capaz, competente y diligente al no inter-poner el recurso de apelación acordado o gestión alguna con el propósito de suplicar una rebaja a la pena impuesta. Ante ello, incurrió en la infracción al Canon 18 del Código de Ética Profesional, supra. Además, el examen detenido de los hechos refleja con certeza que el licenciado Ayala Vega ofreció información inconsistente que refleja la false-dad de sus aseveraciones. Posteriormente, presentó ante el foro primario hechos que no concordaban con la realidad al solicitar la regrabación de los procedimientos justificando que existía una apelación ante esta Curia.
El licenciado Ayala Vega fue inconsistente en su defensa y se valió de artificios para defenderse contra la querella. Primeramente, el letrado insistió en que el quejoso mentía y afirmó haber presentado la apelación para luego justifi-car su incumplimiento con el ardid de que ello respondía a una estrategia de litigio. Como si ello fuera poco, sostuvo que el adelanto de dinero constituyó un reembolso de los gastos en que se incurrió en copias y transcripciones para una solicitud de reconsideración sin que justificaran estos y olvidando que en otras ocasiones sostuvo que ello fue el pago de los honorarios de la apelación que presentó.
Las actuaciones reseñadas, demuestran una falta a los valores de honradez y veracidad que debe tener la profe-sión legal en todo momento. El letrado proveyó informa- *687 ción falsa que no se ajustó a la verdad al solicitar la gra-bación de los procedimientos ante el Tribunal de Primera Instancia cuando aseveró que había un recurso de apela-ción ante este Tribunal. También desplegó una actitud in-digna al presentar su defensa a base de la relación de he-chos que entendió mejor le favorecían sin importar la veracidad de estos. Tal conducta constituyó violaciones a los Cánones 18 y 35 del Código de Ética Profesional, supra.
De otra parte, el letrado retuvo el anticipo pagado por el quejoso por gestiones que no realizó. No fue hasta el 2009 que devolvió estos en un alegado acto de buena fe. La re-tención del dinero adelantado configuró una infracción a los Cánones 20 y 23 del Código de Ética Profesional, supra, ya que el letrado retuvo dinero por servicios que no prestó y faltó a su deber de fiducia y honradez absoluta. El licen-ciado Ayala Vega se vio obligado a devolver el dinero reci-bido debido a las insistencias del quejoso con relación al trámite de su queja. No obstante, en ningún momento en-tendió que no era merecedor de este, sino que aseveró que la devolución era un acto de buena fe.
Por último, las actuaciones del letrado no resultan dig-nas ni reflejan el honor de la profesión de la abogacía. La conducta desplegada expone que el abogado no actuó con la seriedad y la responsabilidad que se requiere para la voca-ción de nuestra profesión. Todo ello en clara violación al Canon 38 del Código de Ética Profesional, supra.
III
Al determinar la sanción disciplinaria que habrá de imponerse a un abogado que haya incurrido en conducta contraria a los cánones del Código de Ética Profesional, puede tomarse en consideración: la buena reputación del abogado en la comunidad; su historial previo; si es su primera falta; si ninguna parte se ha visto perjudicada; si se trata de conducta aislada; el ánimo de lucro que medió en *688 su actuación; si hubo resarcimiento al cliente, y cualesquiera otras consideraciones, ya sean atenuantes o agravantes, que medien según los hechos. In re Hernández González, 188 DPR 721, 729 (2013).
En el caso de autos, resulta evidente que se configura la circunstancia agravante de que la falta de diligencia para cumplir con la encomienda profesional en cuanto al tracto apelativo tuvo el efecto de que la sentencia que le fuera impuesta advino final y firme, sin que el imputado pudiera efectivamente revisarla. Igualmente, existe el agravante de que el licenciado Ayala Vega negó su responsabilidad al sostener hechos huérfanos de prueba y en sí mismos contradictorios. Tampoco ha mostrado arrepentimiento de clase alguna. A su vez, es de notar que el licenciado Ayala Vega en ningún momento pretendió devolver el adelanto de dinero recibido por los trabajos no realizados y, por el con-trario, siempre entendió que no tenía la responsabilidad de devolverlo, ya que adujo que lo hacía en un alegado acto de buena fe.
En definitiva, el licenciado Ayala Vega presentó alega-ciones incompatibles desde el 2007 hasta el presente con relación a la querella presentada. La consideración de las circunstancias expuestas demuestran que el letrado incu-rrió en conducta grave que lesiona la imagen de la profesión.
IV
Por los fundamentos expuestos, concluimos que el Ledo. Héctor L. Ayala Vega violó los Cánones 18, 20, 23, 33, 35 y 38 del Código de Etica Profesional, supra. En considera-ción a la totalidad de las circunstancias particulares que rodean el caso de autos, se le suspende del ejercicio de la profesión por el término de dos años, a partir de la notifi-cación de la presente opinión “per curiam”.

Se le impone el deber de notificar a todos sus clientes de 
*689
su actual inhabilidad para seguir representándolos, devol-verá los expedientes de los casos pendientes y cualesquiera honorarios recibidos por trabajos no realizados, e infor-mará oportunamente de su suspensión a los distintos foros judiciales y administrativos de Puerto Rico. El Alguacil de este Tribunal incautará inmediatamente la obra y el sello notarial del señor Ayala Vega para el trámite correspon-diente por el Director de la Oficina de Inspección de Notarías. Además, deberá certificarnos en treinta días el cumplimiento de estos deberes.

Se dictará sentencia de conformidad.

La Juez Asociada Señora Rodríguez Rodríguez no intervino.

 El quejoso buscó la representación legal de su hermano, la costeó, estuvo estrechamente involucrado con los trámites legales y era informado sobre los porme-nores del caso.

 La Sra. Ana L. Vega Morales fue suspendida indefinidamente del ejercicio de la abogacía y la notaría el 17 de marzo de 2006. Véase In re Vega Morales, 167 DPR 331 (2006).

 El cheque fue emitido el 28 de junio de 2009. Éste no fue canjeado y fue anejado en la comparecencia del 19 de agosto de 2009 que hiciera el quejoso ante este Tribunal.

 El informe de la Comisionada Especial fue notificado el 3 de abril de 2013 y luego mediante una notificación enmendada para corregir un error en la del 1 de mayo de 2013. Desde ese momento comenzó a transcurrir el término simultáneo de veinte días que tienen las partes para ofrecer sus comentarios u objeciones, y sus recomendaciones, en cuanto a la acción que deba tomar el Tribunal. Transcurrido el referido término, el Tribunal resolverá lo que proceda en derecho. Véase Regla 14(Z) y (m) del Reglamento del Tribunal Supremo, 4 LPRAAp. XXI-B.
El 17 de abril de 2013, el licenciado Ayala Vega solicitó la regrabación de los procedimientos. Mediante Resolución de 28 de mayo de 2013 autorizamos la regra-bación solicitada. El 1 de junio de 2013, el licenciado Ayala Vega consignó el arancel necesario. Transcurridos dos meses, el 2 de agosto de 2013 este Tribunal dio por sometido el caso para su adjudicación. Sin embargo, el 9 de agosto de 2013, mediante la Moción Solicitando Remedio, el licenciado Ayala Vega solicita, por primera vez, que el término para presentar sus objeciones y comentarios al informe se compute desde que se presente la transcripción. Esta se presentó el 21 de agosto de 2013. El 27 de agosto de 2013, la Oficina del Procurador General se opuso mediante Oposición a Moción Sometiendo Transcripción de Vista. Luego, el 10 de septiembre de 2013, el licenciado Ayala Vega presentó sus objeciones al informe de la comisionada especial. El procurador general solicitó el desglose de tal escrito, a lo que se opuso el letrado.
La Moción Solicitando Remedio, presentada el 9 de agosto de 2013, y la Moción Sometiendo Transcripción de la Vista Oral, presentada el 21 de agosto de 2013, y las objeciones y recomendaciones en tomo al informe de la Comisionada Especial, presen-tadas el 10 de septiembre de 2013, por el licenciado Ayala Vega fueron presentadas en exceso al término para objetar el informe de la Comisionada Especial y luego de que el caso quedara sometido para su resolución, por lo que ambas mociones se declaran “no ha lugar”. Por lo tanto, no consideraremos la transcripción presentada ni las objecio-nes y recomendaciones. Véase In re Comas, Rosado, 180 DPR 143 (2010).

 Reiteradamente hemos expresado que las determinaciones de hecho que haga un comisionado especial en un procedimiento disciplinario merecen nuestra deferencia. Consecuentemente, no alteramos estas a menos que medie pasión, pre-juicio, parcialidad o error manifiesto en su apreciación de la prueba. In re Soto Charraire, 186 DPR 1019 (2012); In re Muñoz, Morell, 182 DPR 738, 749-750 (2011).

 De las minutas relacionadas surge que el señor Vázquez Pérez fue hallado culpable el 5 de julio de 2006. En ese momento, el licenciado Ayala Vega solicitó que *684 se le permitiera presentar reconsideración al fallo. El 'Tribunal accedió y señaló el acto para dictar la sentencia para el 23 de agosto de 2006. Véase Minuta de 6 de julio de 2006 en el caso criminal GLE2006G0139. En esa fecha, el letrado señaló que presentó una moción de reconsideración, la cual no se había unido al expediente. Así, solicitó un término para producir copia de esta. Véase la Minuta de 23 de agosto de 2006, en el caso criminal GLE2006G0139. Contrario a lo expresado en sala, el licen-ciado no había presentado la moción de reconsideración. Esta fue presentada el 30 de agosto de 2006. Al día siguiente, el foro primario la declaró “no ha lugar” y dictó la sentencia el 2 de octubre de 2006.

 Véase la Réplica a Informe de la Procuradora General de 20 de junio de 2011, en la que el licenciado Ayala Vega indicó:
“[L]a reconsideración se argumentó el 31 de agosto de 2006 y el pago de $1,961.70 se hizo el 11 de septiembre de 2006, antes de que se dictara sentencia el 2 de octubre de 2006. No es razonable que un pago realizado el 11 de septiembre de 2006 pueda constituir un adelanto de pago de honorarios por una apelación que no surge hasta el 2 de octubre de 2006 cuando se dictó la sentencia que ordenó reclusión *685 por cuatro años. Lo razonable es concluir que el pago se refería al reembolso de gastos relacionados con la reconsideración.
Por tratarse de gastos y no de honorarios, el licenciado Ayala Vega, no estaba en la obligación de devolver los $1,961.70 al hermano del acusado. Sólo lo hizo por recomendación de su abogado con la intención de que se viera la buena fe del licen-ciado Ayala Vega y que incluso estaba dispuesto a renunciar a su derecho al reem-bolso de gastos incurridos en aras de terminar cualquier controversia con el señor Vázquez Pérez”. (Énfasis suplido). Contestación a querella de 23 de noviembre de 2011, pág. 2.
Igual argumento sostuvo en su Contestación a querella de 23 de noviembre de 2011, cuando indicó que “la cantidad de $1,961.70 pagada por el hermano del acu-sado no fue un adelanto de honorarios para la apelación, sino el pago de gastos incurridos en copias y transcripciones de vistas de los incidentes ante el TPI relacio-nados con la reconsideración”. (Énfasis suplido). Id., pág 2.
El licenciado Ayala Vega olvidó que en su contestación de 18 de febrero de 2011 al interrogatorio cursado por la Oficina del Procurador General expuso: “[l\o único que recibí para la Apelación fue un pronto de $1,961.70 de los $5,000 dólares que siempre [es] lo mínimo que siempre [sic] he facturado por una apelación”. (Énfasis suplido).