EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re: Josué Daniel de León Rodríguez | 2014 TSPR 29<br><br>190 DPR ____ |
| --- | --- |

Número del Caso: CP-2011-19

Fecha: 25 de febrero de 2014

Comisionada Especial: Hon. Eliadís Orsini Zayas

Oficina del Procurador General:

>       Lcdo. Luis Román Negrón
>       Procurador General
>
>       Lcda. Edna Evelyn Rodríguez
>       Procuradora General Auxiliar

Materia: Conducta Profesional – La suspensión será efectiva el 4 de marzo de 2014 fecha en que se le notificó al abogado de su suspensión inmediata.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

**EN EL TRIBUNAL SUPREMO DE PUERTO RICO**

| In re: | | Conducta Profesional |
|---|---|---|
| JOSUÉ DANIEL DE LEÓN RODRÍGUEZ | Núm.: **CP-2011-19** | |

*PER CURIAM*

En San Juan, Puerto Rico, a 25 de febrero de 2014.

El Lcdo. Josué Daniel de León Rodríguez (licenciado de León o el querellado) fue admitido al ejercicio de la abogacía el 14 de enero de 1987 y a la notaría el 9 de marzo de 1989.[1]

El 31 de agosto de 2006, la entonces Juez del Tribunal de Primera Instancia, Sala Superior de San Juan, Hon. Carmen A. Bravo Cerezo, trajo ante nuestra atención posibles violaciones éticas cometidas por el licenciado de León durante el trámite del Caso Civil Núm. KEF2004-1243, Administración de Terrenos de Puerto Rico v. Municipio de Luquillo, Sucn. de Jovito Dávila Rodríguez, etc. Luego de evaluar toda la prueba que obra en autos, concluimos que

---

[1] El 8 de octubre de 1998 el querellado cesó voluntariamente del ejercicio de la notaría y fue readmitido el 13 de septiembre de 2002.

en efecto el querellado incurrió en serias violaciones éticas durante el transcurso del mencionado caso.

Veamos los hechos que dan base a nuestra jurisdicción disciplinaria.

I

El 30 de noviembre de 2004 la Administración de Terrenos de Puerto Rico (Administración de Terrenos), presentó ante el Tribunal de Primera Instancia, Sala Superior de San Juan, una Petición de Expropiación Forzosa. Conjuntamente, consignó cuarenta mil doscientos cuarenta dólares ($40,240.00) a favor de las Sucesiones de Jovito Dávila Rodríguez y Teresa Pagán Rivera (Sucesión Dávila Pagán o Sucesión),[2] como compensación por la expropiación de una estructura propiedad de éstos, ubicada en el Municipio de Luquillo.

El 29 de julio de 2005 el licenciado de León compareció en representación de la Sucesión Dávila Pagán y solicitó el retiro de los fondos consignados. Éste le indicó al Tribunal que contaba con la autorización de los miembros de la Sucesión para recibir todos los cheques y que, una vez recibidos, se encargaría de hacerlos llegar a los herederos. A tales fines y luego de varios trámites procesales, el 9 de diciembre de 2005 recibió once (11)

---

[2] La Sucesión Dávila Pagán se compone de: Ana, Ángel Luis, Aurea Luz, Carmen María, Enrique, José Jovito, María Cristina y Virginia, todos de apellidos Dávila Pagán; Silvia Rodríguez Pagán; Heriberto y Jovita, ambos Dávila Casanova.

cheques para los miembros de la Sucesión, así como un cheque a su nombre por concepto de honorarios de abogado.[3]

El 11 de abril de 2006, mediante escrito presentado por derecho propio, el Sr. Enrique Dávila Pagán (señor Enrique Dávila), miembro de la Sucesión y cliente del querellado, informó al foro de instancia que seis (6) de los once (11) cheques fueron cambiados por el licenciado de León, para un total de veinte mil trescientos treinta y dos dólares ($20,332.00). No obstante, el dinero no lo entregó a sus correspondientes beneficiarios.[4] El señor Enrique Dávila acompañó su escrito con copia de todos los cheques cancelados y solicitó que se citara al licenciado de León para una vista.

En atención a lo anterior, el foro primario señaló una vista para el 14 de junio de 2006, a la cual el licenciado de León no compareció. Comparecieron los señores Enrique Dávila y José Jovito Dávila López (señor José Dávila) (conjuntamente, los señores Dávila), ambos miembros de la Sucesión y clientes del querellado. Estos manifestaron que el licenciado de León les llamó en varias ocasiones para indicarles que estaba enfermo y que interesaba reunirse con ellos para entregarles el dinero que les

---

[3]     Mediante escrito presentado ante el tribunal de instancia la Sucesión Dávila Pagán autorizó que se le dedujera de su compensación los honorarios de abogado del querellado.

[4]     Cuatro (4) cheques, cada uno, por la cantidad de cuatro mil doscientos veintisiete dólares ($4,227.00) a nombre de Ana, Aurea Luz, Enrique y Virginia, todos Dávila Pagán. Además, dos (2) cheques por mil setecientos doce dólares ($1,712.00), cada uno, a nombre de Heriberto y Jovita, ambos Dávila Casanova.

había retenido. El Tribunal tomó conocimiento de lo informado y señaló una vista de seguimiento para el 16 de agosto de 2006, a la cual, nuevamente, el querellado no compareció, ni excusó su incomparecencia. En vista de ello, el foro de instancia emitió contra el licenciado de León una orden para mostrar causa por la cual el Tribunal no debía actuar en relación con los planteamientos sobre la falta de entrega de los cheques. Asimismo, señaló vista para el 29 de agosto de 2006 y ordenó se notificara la Minuta personalmente al querellado por conducto de la Oficina de Alguaciles. El día de la vista, el Alguacil de la Sala informó que la citación era negativa, ya que no se pudo localizar. Como resultado de lo anterior, mediante Resolución de 31 de agosto de 2006, el Tribunal de Primera Instancia refirió a nuestra atención la conducta del querellado.

Así las cosas, mediante Orden emitida el 12 de septiembre de 2006, el Tribunal de Primera Instancia hizo constar que el licenciado de León había comparecido personalmente "a exponer las razones de su incomparecencia a las vistas señaladas", por lo que procedió a señalar una vista sobre el estado de los procedimientos para el 11 de octubre de 2006. En esa ocasión, cuando se atendió el caso por primera vez, el querellado compareció, mas no así sus clientes. El licenciado de León informó que se proponía citar a los clientes para que comparecieran a su oficina el próximo miércoles, 18 de octubre de 2006, por

lo que solicitó un señalamiento para esa misma semana. Por consiguiente, se fijó una audiencia para el 26 de octubre de 2006, a las 9:00 de la mañana.

Llegado el día de la vista, el querellado no compareció. El Tribunal hizo constar para récord que recibió una llamada de la oficina del querellado para informar que éste no iba a poder comparecer por encontrarse hospitalizado, así que se reseñaló la vista para el 9 de noviembre de 2006.[5]

El 8 de noviembre de 2006, mediante moción a tales fines, el licenciado de León solicitó la transferencia de la vista para el 16 de noviembre de 2006 debido a que se encontraba litigando un juicio por jurado en el Tribunal de Primera Instancia, Sala Superior de Carolina. Se comprometió a "adelantar las gestiones pendientes con la Sucesión Dávila [Pagán] antes de ese día, para no cargar el calendario del Tribunal y el de los miembros de la Sucesión…."

A pesar de haberse reseñalado la vista para la fecha solicitada por el propio querellado, éste no compareció, ni excusó su incomparecencia.[6] En atención a lo anterior, el tribunal de instancia emitió una Orden para que el

---

[5]     Originalmente la vista fue reseñalada para el 1 de noviembre de 2006. Sin embargo, a solicitud de ambas partes, se transfirió para el 9 de noviembre de 2006.

[6]     En la Minuta de 16 de noviembre de 2006 se hizo constar que ese día se recibió una llamada telefónica de un Alguacil del Tribunal de Primera Instancia, Sala de Carolina, quien informó que el licenciado de León había comenzado un juicio por jurado en esa Sala, por lo que no podía comparecer. Por otro lado, del expediente se desprende que el 15 de noviembre de 2006, a las 4:06 de la tarde, el querellado presentó una moción solicitando la transferencia de la vista del próximo día.

licenciado de León mostrara causa por la cual no debía ser encontrado incurso en desacato por su reiterado incumplimiento con las citaciones del tribunal. Señaló vista de desacato para el 30 de noviembre de 2006 y ordenó que se notificara la Minuta personalmente al querellado.

El licenciado de León tampoco compareció a la vista de desacato. No obstante, por no surgir del expediente que la Minuta le hubiese sido notificada personalmente,[7] el tribunal de instancia reseñaló la vista para el 13 de diciembre de 2006 y, luego, a solicitud del querellado, para el 23 de enero de 2007, a las 9:00 de la mañana. Ese mismo día, a las 8:33 de la mañana, el querellado presentó una nueva solicitud de transferencia de vista,[8] la cual fue declarada *No Ha Lugar* en corte abierta. A dicha vista, la cual fue celebrada ante una nueva juez,[9] comparecieron los señores Dávila y la Lcda. Valgina Rodríguez Calderón (licenciada Rodríguez), en representación de la Administración de Terrenos. La licenciada Rodríguez informó, entre otras cosas, que en el caso se había dictado sentencia, quedando pendiente únicamente que el licenciado de León les devolviera el dinero a sus clientes. Informó, además, que a pesar de que éste había

---

[7]     Según surge del expediente del caso, el 29 de noviembre de 2006, a las 4:24 de la tarde, el querellado presentó una solicitud para transferir la vista pautada para el 30 de noviembre de 2006, lo que aparenta indicar que, en efecto, el querellado fue debidamente notificado.

[8]     En su solicitud, el querellado alegó que recibió la notificación de la vista el 22 de enero de 2007.

[9]     Hon. Mabel Ramón Milián, Juez Superior.

acordado reunirse con sus clientes para resolver el asunto, aún no lo había hecho, ni se había personado a las vistas señaladas. Ante su incomparecencia, el foro de instancia ordenó al querellado que mostrara causa por la cual no debía imponerle sanciones económicas en su carácter personal. Además, pautó vista para el 26 de abril de 2007 y ordenó que se citara personalmente al licenciado de León bajo el apercibimiento de que, de no comparecer, podría ser encontrado incurso en desacato y arrestado sin más oírle.

A la vista del 26 de abril de 2007 comparecieron los señores Dávila, la licenciada Rodríguez y el Lcdo. Ángel Toledo López (licenciado Toledo), en sustitución del querellado. Según surge de la Minuta, el licenciado Toledo informó al Tribunal que el querellado estaba atravesando una situación muy difícil, debido a la gravedad de la salud de su padre. Expresó, además, que el licenciado de León "le solicitó unirse a la representación legal para trabajar en conjunto un proceso de adelanto de herencia" y para que "actuar[a] como enlace entre el licenciado [de León] y la parte con interés, a los efectos de entregar el dinero adeudado en las próximas dos semanas". Por su parte, el señor José Dávila manifestó que "el problema es la falta de credibilidad y el incumplimiento" del querellado. A raíz de lo anterior, el foro primario señaló una vista de seguimiento para atender bajo juramento el asunto de los cheques.

El 17 de mayo de 2007 se celebró la vista de seguimiento. El tribunal informó que recibió una copia de cortesía de la moción de transferencia presentada por el licenciado de León ese mismo día a las 9:52 de la mañana. En esta informa que, por razón de una condición de salud, no podía comparecer y solicitaba la transferencia de la vista. No obstante, debido a que el querellado no acreditó su incapacidad para comparecer, el foro de instancia declaró sin lugar la solicitud y celebró la vista en su ausencia. En la misma los señores Dávila, bajo juramento, informaron que el licenciado de León no se había comunicado con ellos, ni les había entregado los veinte mil trescientos treinta y dos dólares ($20,332.00) que les había retenido a varios miembros de la Sucesión. Además, el señor Enrique Dávila indicó que la firma endosando el cheque emitido a su favor no era la suya.

En virtud de lo anterior, el foro de instancia refirió copia de las declaraciones juradas de los señores Dávila al Fiscal de Distrito de San Juan para que evaluara la posibilidad de "presentar acciones criminales" contra el licenciado de León.

El 14 de junio de 2007 el licenciado de León compareció ante el foro primario y acreditó haber tramitado la entrega de cuatro (4) de los cheques de la

Sucesión.[10] El 2 de agosto de 2007, el querellado presentó ante el tribunal de instancia un escrito titulado "Moción Informativa y Sobre Consignación de Cheques" mediante el cual indicó que el 2 de junio de 2007 le entregó seis (6) cheques a la Notario Nuria María del Rocío Sánchez Díaz para que, junto con un relevo de responsabilidad, los entregara a los miembros de la Sucesión, y levantara un acta a estos efectos. Informó, además, que luego de múltiples gestiones, no había conseguido las direcciones postales de Heriberto y Jovita, ambos Dávila Casanova, por lo que procedía a consignar en la Secretaría el dinero que les correspondía a éstos. El foro primario aceptó la consignación.

## II

Luego de evaluar la Resolución de 31 de agosto de 2006 del Tribunal de Primera Instancia elevada ante nos, el 26 de enero de 2007 le concedimos al licenciado de León el término de veinte (20) días para que se expresara sobre la misma, con el apercibimiento de suspensión indefinida de la abogacía.

Tras solicitar tres (3) prórrogas,[11] el 10 de agosto de 2007 el querellado nos informó mediante "Moción en Cumplimiento de Orden" que ya les había devuelto todo el

---

[10] El Sr. Enrique Dávila recibió el cheque personalmente. A las señoras Ana Hilda, Aurea Luz y Virginia, todas Dávila Pagán, les envió los cheques por correo certificado.

[11] El querellado presentó mociones solicitando prórroga los días 22 de febrero, 12 de abril y 29 de mayo de 2007, respectivamente.

dinero a sus clientes. También alegó que la conducta relatada por el Tribunal de Primera Instancia fue ocasionada por una condición emocional y que nunca fue su intención retener permanentemente el dinero de sus clientes.

El 16 de noviembre de 2007 referimos el asunto al Procurador General para la correspondiente investigación e informe. Pendiente la investigación del Procurador General, el 11 de febrero de 2008 suspendimos al querellado del ejercicio de la abogacía por otra queja presentada anteriormente. In re de León Rodríguez, 173 D.P.R. 80 (2008).[12] El 25 de septiembre de 2008 fue reinstalado, luego de evaluar su solicitud a tales efectos. In re de León Rodríguez, 174 D.P.R. 862 (2008).

Finalmente, el 26 de octubre de 2011 el Procurador General sometió su Informe para el caso de autos. Determinó que el querellado infringió el Código de Ética Profesional, 4 L.P.R.A. Ap. IX (2012) (Código de Ética Profesional), "al no acatar las órdenes sobre vistas emitidas por el [T]ribunal de [P]rimera [I]nstancia, no asistir a las vistas señaladas por dicho tribunal ni excusar su incomparecencia, y al retener y cambiar cheques emitidos para beneficio de sus clientes…." Asimismo, sostuvo que "las razones que expone el abogado para explicar su conducta, ni la posterior devolución del

---

[12] Suspendimos al querellado del ejercicio de la abogacía por infringir los Cánones 9, 18 y 19 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX (2012)(Código de Ética Profesional).

dinero, en lo más mínimo justifican o excusan sus actuaciones".

Examinado el Informe y la réplica del querellado, ordenamos al Procurador General que presentara la correspondiente querella, la cual sometió el 2 de diciembre de 2011. Al licenciado de León se le imputaron los siguientes cargos:

### Cargo I

El licenciado Josué De León Rodríguez infringió el Canon 9 de Ética Profesional, 4 L.P.R.A., Ap. IX, cuando hizo caso omiso de las órdenes que emitiera el Tribunal de Primera Instancia, a pesar de haber recibido dichas órdenes, para que compareciera ante sí a explicar el cobro no autorizado de los cheques emitidos para beneficio de sus clientes (citas omitidas).

### Cargo II

El licenciado Josué De León Rodríguez violentó el Canon 12 de Ética Profesional, 4 L.P.R.A., Ap. IX, al no comparecer a las vistas señaladas por el Tribunal de Primera Instancia para que explicara la conducta que le imputaba su cliente Enrique Dávila Pagán y no justificar su incomparecencia.

### Cargo III

El licenciado Josué De León Rodríguez actuó en contravención al deber ético que le impone el Canon 23 de Ética Profesional, 4 L.P.R.A., Ap. IX, al retener, cambiar y mezclar con sus propios bienes el dinero que le fuera entregado para beneficio de sus clientes. En consideración a que la relación abogado cliente es de naturaleza fiduciaria, que debe estar fundamentada en la honradez absoluta, el letrado debió inmediatamente entregar a sus clientes el dinero que para beneficio de ellos recibió en el año 2005 y no retenerlo hasta julio y agosto de 2007 cuando, por razón de la queja génesis de esta Querella, procedió a devolverlo.

Cargo IV

> La conducta del licenciado Josué De León Rodríguez, descrita en los cargos anteriormente imputados violentó las disposiciones del Canon 38 de Ética Profesional, 4 L.P.R.A., Ap. IX, el cual dispone que todo abogado debe esforzarse, al máximo de su capacidad, en la exaltación del honor y la [dignidad] de su profesión, evitando hasta la apariencia de conducta profesional impropia.

Una vez recibida la contestación del querellado, designamos a la Lcda. Eliadís Orsini Zayas Comisionada Especial (Comisionada Especial) para que recibiera la prueba y nos rindiera un Informe con sus determinaciones de hechos y recomendaciones en derecho. Dicho Informe fue presentado el 2 de julio de 2013.[13]

La Comisionada Especial determinó en su Informe que "es indiscutible que el abogado querellado acepta que ocurrieron los eventos (que no es otra cosa que una apropiación indebida)…."[14] Aunque entendió que el querellado cambió los cheques con autorización de sus clientes, señaló que el problema surgió porque una vez cambiados, éste "retuvo para sí el importe de los seis [] cheques; los depositó en su cuenta de la oficina, por lo

---

[13] En su Informe la Comisionada Especial hizo constar que la prueba documental presentada por ambas partes consistió del expediente de la queja Núm. AB-2006-0252, la cual dio origen a este procedimiento disciplinario; el expediente de la querella de epígrafe, Núm. CP-2011-19, y el expediente del caso sobre Expropiación Forzosa, Civil Núm. KEF2004-1243 de la *Administración de Terrenos de Puerto Rico* v. *Municipio de Luquillo, Sucn. de Jovito Dávila Rodríguez, etc.* presentado ante el Tribunal de Primera Instancia, Sala Superior de San Juan. Por su parte, el querellado también presentó cuatro (4) testigos de reputación.

[14] El 27 de marzo de 2013 la Comisionada Especial emitió un Acta de Conocimiento Judicial sobre los procedimientos en el expediente del caso sobre Expropiación Forzosa, Civil Núm. KEF2004-1243, *supra*. La misma fue aceptada en su totalidad por las partes el 24 de abril de 2013 y, posteriormente, fue incorporada en el Informe de la Comisionada Especial.

que mezcló sus dineros con los de ellos" y tardó aproximadamente un (1) año y ocho (8) meses en devolverlos. Además, cuestionó las excusas dadas por el licenciado de León para justificar sus incomparecencias a las vistas, pues, "si […] estaba sufriendo situaciones emocionales por razón de la enfermedad de su padre, siendo de tal naturaleza que le impedía comparecer a la sala de expropiaciones…[,] ¿cómo podía [] simultáneamente atender otros múltiples asuntos; y algunos de gran envergadura y posible tensión, como era el caso por jurado de alegado gran interés público que envolvía a varios coacusados-policías todos."

En síntesis, la Comisionada Especial determinó que, a pesar de todas las oportunidades que se le concedieron al licenciado de León para que rectificara su conducta, éste "o no comparecía a las vistas pautadas, o hacía representaciones ante la Juez a cargo y sus clientes de que en los próximos días solucionaría el problema; lo cual incumplía; y así trascurrió el tiempo, sin él devolver el dinero a sus clientes. El abogado siempre se excusaba con razones que de ningún modo eran justificación para su conducta…." No fue sino "hasta llegado el momento más crítico, cuando el asunto se iba a referir al Fiscal de Distrito", que el querellado finalmente devolvió el dinero. Concluyó que los hechos establecen, con prueba clara, robusta y convincente, que el licenciado de León violó los Cánones 9, 12, 23 y 38 del Código de Ética

Profesional y recomendó la suspensión indefinida del ejercicio de la abogacía.

El 23 de julio de 2013 el querellado presentó una réplica al Informe de la Comisionada Especial.[15] Sometido el caso ante nuestra consideración, procedemos a resolver.

III

Al licenciado de León se le imputa violar los Cánones 9, 12, 23 y 38 del Código de Ética Profesional. Veamos qué establecen los mismos.

**A. Respeto hacia los tribunales**

El Canon 9 del Código de Ética Profesional le impone a los miembros de la profesión legal el deber de "observar para con los tribunales una conducta que se caracterice por el mayor respeto." En innumerables ocasiones hemos expresado que la naturaleza de la función del abogado requiere una escrupulosa atención y obediencia a las

---

[15] En sus múltiples escritos, el querellado solicita que le acreditemos a la sanción a imponerse en este caso el término de seis (6) meses que estuvo suspendido como resultado de los procedimientos llevados a cabo en el caso In re de León Rodríguez, 173 D.P.R. 80 (2008). El licenciado de León entiende que, conforme a lo resuelto en In re Flores Ayffán I, 170 D.P.R. 126 (2007), se le debe acreditar dicha suspensión, ya que ambas quejas eran coetáneas y el Procurador General las debió tramitar conjuntamente. No le asiste la razón. Aunque en ambos casos el Procurador General descontinuó los trámites de las quejas pendientes luego de que se suspendiera a los letrados por otras quejas, los hechos sustanciales de los mismos claramente se distinguen.

En primer lugar, en In re Flores Ayffán I, supra, el abogado querellado no fue reinstalado hasta que culminaron los trámites de la queja que fue previamente desatendida. Luego de solicitar la reinstalación, el querellado estuvo aproximadamente dos (2) años sin poder ejercer la abogacía, esperando a ser reinstalado. En el caso de autos, por el contrario, el licenciado de León fue reinstalado a la abogacía a los dos (2) meses de haber solicitado su reinstalación y, actualmente, se encuentra ejerciendo la profesión mientras se dilucida la queja que quedó pendiente. En segundo lugar, las quejas en el presente caso difícilmente se pueden catalogar como coetáneas, ya que la que culminó con la suspensión de seis (6) meses se presentó aproximadamente un año y medio (1 ½) antes que la queja del caso de autos.

órdenes judiciales. In re García Ortiz, 187 D.P.R. 507 (2012); In re Fidalgo Córdova, 183 D.P.R. 217 (2011). La desatención a dichas órdenes constituye un serio insulto a la autoridad de los tribunales e infringe el Canon 9 del Código de Ética Profesional. In re Dávila Toro, 179 D.P.R. 833 (2010); In re Hoffman Mouriño, 170 D.P.R. 968 (2007).

## B. Puntualidad y tramitación de las causas

Por su parte, el Canon 12 del Código de Ética Profesional, establece lo siguiente:

> Es deber del abogado hacia el tribunal, sus compañeros, las partes y testigos el ser puntual en su asistencia y conciso y exacto en el trámite y presentación de las causas. Ello implica el desplegar todas las diligencias necesarias para asegurar que no se causen indebidas dilaciones en su tramitación y solución. Sólo debe solicitar la suspensión de vista cuando existan razones poderosas y sea indispensable para la protección de los derechos sustanciales de su cliente.

El citado canon le impone a los profesionales del derecho el deber de tramitar los casos con puntualidad y diligencia. In re Hernández González, 2013 T.S.P.R. 70, 188 D.P.R. __ (2013); In re Vélez Báez, 176 D.P.R. 201 (2009); In re Vélez Lugo, 168 D.P.R. 492 (2006). Este deber ha de cumplirse en todas las etapas de un litigio e incluye la más estricta observancia a las órdenes del tribunal. In re Rivera Ramos, 178 D.P.R. 651 (2010); In re Soto Colón, 155 D.P.R. 623 (2001). Así, pues, la continua desobediencia con las órdenes de un tribunal

quebranta el referido canon. In re Rivera Ramos, *supra*. Igualmente, la ausencia injustificada a una vista debidamente citada constituye una violación al mismo. In re García Ortiz, *supra*; In re León Malavé, 172 D.P.R. 1036 (2008). Un abogado no tiene la discreción de decidir a qué vistas comparece o no; esto le compete al tribunal. In re León Malavé, *supra*. Por otro lado, recordemos que los señalamientos conflictivos no son razones válidas para suspender y posponer vistas que han sido señaladas con tiempo. In re Rivera Ramos, *supra*; In re Vélez Lugo, *supra*; Neri Tirado v. Tribunal Superior, 104 D.P.R. 429 (1975).[16]

Ahora bien, no toda falta de diligencia amerita una sanción ética. En In re García Ortiz, *supra*, indicamos que:

> [L]os cánones de ética profesional no son, ni deben convertirse, en armas procesales adicionales para adelantar los intereses individuales de una de las partes en un caso. *Lluch v. España Service Sta.*, 117 D.P.R. 729 (1986). La falta de diligencia que da lugar a sanciones éticas tiene que ser crasa, que denote falta de competencia o un menosprecio al sistema de administración judicial. Íd. Normalmente, los tribunales de instancia deben atender y resolver las dilaciones o los incidentes procesales en un caso. Íd.

## C. Manejo de los bienes del cliente

De otra parte, el canon 23 del Código de Ética Profesional dispone que:

---

[16] Es importante resaltar que "[l]os abogados son funcionarios del tribunal y, como tales, están llamados a ayudarlos en su misión de hacer justicia rápida y económica". Neptune Packing Corp. v. Wackenhut Corp., 120 D.P.R. 283, 291 (1988) (citas omitidas).

> La naturaleza fiduciaria de las relaciones entre abogado y cliente exige que éstas estén fundadas en la honradez absoluta. En particular, debe darse pronta cuenta del dinero u otros bienes del cliente que vengan a su posesión y no debe mezclarlos con sus propios bienes ni permitir que se mezclen.

En relación a dicho canon hemos expresado que "la confianza entre abogado y cliente, en particular, el escrupuloso manejo de fondos, constituye elemento inseparable que se proyecta no sólo dentro del foro togado puertorriqueño, sino en el respeto y la estima ante la imagen pública…." In re Ramírez Ferrer, 147 D.P.R. 607, 613 (1999) (citando a In re Félix, 111 D.P.R. 671, 674 (1981) (citas omitidas)). Véase, además, In re Bonilla Berlingeri, 175 D.P.R. 897 (2009). En numerosas ocasiones hemos señalado que la retención de fondos pertenecientes a sus clientes por parte de los abogados, constituye una práctica altamente lesiva a la profesión legal e infringe los postulados del aludido canon. In re Colón Hernández, 2013 T.S.P.R. 91, 189 D.P.R. __ (2013); In re Rivera Lozada, 176 D.P.R. 215 (2009). Tal conducta menoscaba la naturaleza fiduciaria de la relación abogado-cliente y lesiona la imagen de la profesión legal en la comunidad. In re Colón Hernández, supra; In re Cid, 173 D.P.R. 40 (2008). "Ni la devolución del dinero retenido al cliente, ni la falta de intención para apropiárselos permanentemente eximen a un abogado de la sanción disciplinaria correspondiente…." In re Colón Hernández, supra. "La dilación en la devolución de los fondos de por

sí es causa suficiente para tomar medidas disciplinarias contra el abogado." In re Vázquez O'Neill, 121 D.P.R. 623 (1988). Véase, además, In re Ramírez Ferrer, *supra*; In re Arana Arana, 112 D.P.R. 838 (1982).

## D. Preservación del honor y dignidad de la profesión

Por último, el Canon 38 del Código de Ética Profesional le impone a los miembros de la profesión legal el deber de preservar el honor y dignidad de la profesión. El mencionado canon requiere, entre otras cosas, que todo abogado se esfuerce "al máximo de su capacidad, en la exaltación del honor y dignidad de su profesión, aunque el así hacerlo conlleve sacrificios personales y debe evitar hasta la apariencia de conducta profesional impropia…." Íd. Asimismo, exige que "todo abogado, tanto en su vida privada como en el desempeño de su profesión, debe conducirse en forma digna y honorable…." Íd. Conforme a este precepto ético, hemos señalado que "cada abogado es un espejo en el cual se refleja la imagen de la profesión, por lo que debe actuar con limpieza, lealtad y el más escrupuloso sentido de la responsabilidad". In re Bonilla Berlingeri, *supra*, pág. 904 (citando a In re Curras Ortiz, 174 D.P.R. 502 (2008)). Véase, además, In re Ojeda Martínez, 185 D.P.R. 1068 (2012).

## E. Informe de la Comisionada Especial

En reiteradas ocasiones hemos expresado que, aunque no estamos obligados a sostener las determinaciones de hechos

realizadas por un Comisionado Especial, las mismas merecen nuestra deferencia, salvo que se demuestre pasión, prejuicio, parcialidad o error manifiesto en su apreciación de la prueba. In re García Ortiz, *supra*; In re García Aguirre, 175 D.P.R. 433 (2009). Sin embargo, dicha deferencia aplica cuando las determinaciones de hechos están basadas en prueba testifical, pues es cuando el Comisionado Especial se encuentra en una mejor posición para aquilatar la prueba. In re García Ortiz, *supra*; In re González Ortiz, 162 D.P.R. 80 (2004); In re Morales Soto, 134 D.P.R. 1012 (1994). Pero, "cuando esas determinaciones estén basadas en la prueba documental que obra en el expediente, el tribunal revisor está en igual posición que el Comisionado Especial y por ende puede adoptar, modificar o rechazar tal informe". In re García Ortiz, *supra* (cita omitida).

Establecido el marco doctrinal aplicable, procedemos a determinar si el querellado incurrió en las violaciones imputadas.

## IV

Luego de evaluar el Informe de la Comisionada Especial, los escritos presentados por el querellado y toda la prueba que obra en el expediente del caso, concluimos que el licenciado de León faltó a los deberes impuestos por los Cánones 9, 12, 23 y 38 del Código de Ética Profesional.

Como observamos, el licenciado de León recibió once (11) cheques del Tribunal de Primera Instancia a nombre de sus clientes, de los cuales únicamente entregó cinco (5) a sus respectivos beneficiarios. Retuvo los restantes seis (6) cheques y los depositó en su cuenta comercial. Por más de un (1) año, el querellado ignoró los reclamos de sus clientes para que les devolviera el dinero. No fue hasta que el foro de instancia refirió el asunto al Fiscal de Distrito, que devolvió el dinero en su totalidad.

Dadas las circunstancias presentes en este caso, es forzoso concluir que el licenciado de León violó los principios éticos que emanan del Canon 23 del Código de Ética Profesional. De los hechos esbozados anteriormente, se desprende que el querellado no dio pronta cuenta del dinero de sus clientes y mezcló los bienes de sus representados con los suyos. Transcurrido aproximadamente un (1) año y ocho (8) meses y tras múltiples requerimientos judiciales, finalmente procedió a devolverlos. Al retener indebidamente los fondos pertenecientes a sus clientes, el querellado incumplió con su deber de fiducia hacia éstos y demostró una actitud de menosprecio hacia sus obligaciones como togado. Según hemos expresado, ni la posterior devolución del dinero retenido, ni la falta de intención de apropiárselos permanentemente exime la conducta desplegada por el licenciado de León, pues la mera dilación en la entrega es suficiente para imponerle una sanción disciplinaria.

Asimismo, resolvemos que al desatender reiteradamente las órdenes del foro de instancia y no comparecer a las vistas habiendo sido debidamente citado, el licenciado de León violó los Cánones 9 y 12 del Código de Ética Profesional. El incumplimiento continuo del querellado con los requerimientos del tribunal causó indebidas dilaciones en la tramitación y solución del caso y demostró un grave menosprecio a la administración judicial. De igual manera, por más de un (1) año, el querellado le faltó el respeto al tribunal, a sus clientes y a sus compañeros abogados, pues continuamente hacía representaciones que luego no cumplía.[17]

Por último, no albergamos duda alguna que la conducta incurrida por el querellado no estuvo a la altura de los postulados del Canon 38 del Código de Ética Profesional. Al no actuar con integridad, lealtad y el más escrupuloso sentido de responsabilidad, el querellado lesionó la reputación de la profesión legal en la comunidad y quebrantó la confianza depositada en él como miembro de la clase togada.

En virtud de lo anterior, sostenemos que las violaciones del licenciado de León a los Cánones 9, 12, 23 y 38 del Código de Ética Profesional quedaron probadas mediante prueba clara, robusta y convincente.

---

[17] Recordemos que "[l]a misión de los abogados en la sociedad es altamente noble, pues están llamados a auxiliar a la recta administración de justicia. En ellos confían, no sólo las partes interesadas en los pleitos, sino las cortes mismas." In re Díaz, 16 D.P.R. 82, 92 (1910).

**V**

Nos resta determinar cuál sanción le debemos imponer al querellado.

Reiteradamente hemos mencionado que, al momento de determinar la sanción disciplinaria nos sirven de guía los siguientes factores:

> (i) la buena reputación del abogado en la comunidad; (ii) su historial previo; (iii) si ésta constituye su primera falta y si alguna parte ha resultado perjudicada; (iv) *la aceptación de la falta y su sincero arrepentimiento*; (v) si se trata de una conducta aislada; (vi) *el ánimo de lucro que medió en su actuación*; (vii) resarcimiento al cliente, y (viii) cualesquiera otras consideraciones, ya bien *atenuantes o agravantes*, que medien de acuerdo con los hechos. In re Quiñones Ayala, 165 D.P.R. 138, 147 (2005) (nota al calce y citas omitidas). Véanse In re Ojeda Martínez, *supra*; In re Valentín Custodio, 187 D.P.R. 529 (2012).

Asimismo, debemos tener presente que es nuestro deber, en lo posible, "tratar faltas parecidas de modo análogo y [así] mantener la reglamentación ético-profesional como cuerpo normativo coherente". In re Díaz Alonso, Jr., 115 D.P.R. 755 (1984). Por ello, hemos expresado que "[c]asos similares ameritan sanciones similares". In re González Acevedo, 165 D.P.R. 81 (2005). Ahora bien, no podemos ignorar la realidad de que cada caso es único, por lo que, en última instancia, las circunstancias particulares de cada uno son determinantes al momento de imponer la sanción.

En el caso de autos, consideramos como atenuante el que, desde un principio, el querellado aceptó la conducta imputada y mostró un sincero arrepentimiento durante el procedimiento disciplinario. No obstante, el hecho de que fue suspendido del ejercicio de la abogacía anteriormente, así como la gravedad de la conducta incurrida en el presente caso y las sanciones impuestas en casos anteriores, nos obligan a decretar la *suspensión indefinida* del licenciado de León del ejercicio de la abogacía, a partir de la notificación de la presente Opinión *Per Curiam*.[18]

Le ordenamos, por tanto, notificar a todos sus clientes de su inhabilidad para continuar representándolos y devolver tanto los expedientes de los casos pendientes, como los honorarios recibidos por trabajos no realizados. Además, deberá informar oportunamente de su suspensión a los foros judiciales y administrativos del país. De igual forma, debe certificar a este Tribunal el cumplimiento con lo aquí establecido dentro del término de treinta (30) días, a partir de la notificación de esta Opinión *Per Curiam* y su correspondiente Sentencia.

---

[18] Véanse, entre otros, In re Colón Hernández, 2013 T.S.P.R. 91, 189 D.P.R. __ (2013) (suspensión de un (1) año por infringir, únicamente, el Canon 23 del Código de Ética Profesional); In re Cid, 173 D.P.R. 40 (2008) (suspensión indefinida por quebrantar los Cánones 23 y 38 del Código de Ética Profesional); In re García Muñoz, 170 D.P.R. 780 (2007) (separación indefinida por faltar a los deberes impuestos por los Cánones 19, 20 y 23 del Código de Ética Profesional); In re Vázquez O'Neill, 121 D.P.R. 623 (1988) (suspensión indefinida por violar el Canon 23 del Código de Ética Profesional y las disposiciones de la anterior Ley Notarial de Puerto Rico, 4 L.P.R.A. ant. sec. 1001 y ss.).

El Alguacil de este Tribunal procederá a incautar la obra notarial del licenciado de León, incluyendo su sello notarial, y lo entregará a la Oficina de Inspección de Notarías para el correspondiente examen e informe.

Se dictará Sentencia de conformidad.

**EN EL TRIBUNAL SUPREMO DE PUERTO RICO**

| | | |
|---|---|---|
| In re:<br><br><br>**JOSUÉ DANIEL DE LEÓN RODRÍGUEZ** | Núm.: **CP-2011-19** | Conducta Profesional |

**SENTENCIA**

En San Juan, Puerto Rico, a 25 de febrero de 2014.

Por los fundamentos expuestos en la Opinión *Per Curiam* que antecede, la cual se hace formar parte íntegra de la presente Sentencia, se decreta la *suspensión indefinida* del Lcdo. Josué Daniel de León Rodríguez del ejercicio de la abogacía, a partir de la notificación de tal Opinión.

Le ordenamos, por tanto, notificar a todos sus clientes de su inhabilidad para continuar representándolos y devolver tanto los expedientes de los casos pendientes, como los honorarios recibidos por trabajos no realizados. Además, deberá informar oportunamente de su suspensión a los foros judiciales y administrativos del país. De igual forma, debe certificar a este Tribunal el cumplimiento con lo aquí establecido dentro del término de treinta (30) días, a partir de la notificación de esta Opinión *Per Curiam* y su correspondiente Sentencia.

El Alguacil de este Tribunal procederá a incautar la obra notarial del licenciado de León, incluyendo su sello notarial, y lo entregará a la Oficina de Inspección de Notarías para el correspondiente examen e informe.

Así lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Jueza Asociada señora

Pabón Charneco concurre con la determinación del Tribunal haciendo constar la siguiente expresión: La Jueza Asociada señora Pabón Charneco está de acuerdo con que procede imponerle una sanción al abogado objeto de la presente acción disciplinaria.  No obstante, en lugar de una suspensión indefinida de la práctica de la abogacía, suspendería al licenciado de León Rodríguez por un término de dos (2) años.

                    Aida Ileana Oquendo Graulau
                    Secretaria del Tribunal Supremo